[S. F. No. 12270. In Bank.—March 31, 1927.]

X. RODWELL MEYER et al., Petitioners, v. SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO., et al., Respondents.

[1] ESTATES OF DECEASED PERSONS — TESTAMENTARY TRUSTS — CONSTRUCTION—STATUS OF PARTIES.—Where a trust created by will provided that the daughter of the decedent was to receive as beneficiary a certain share of the net income to be derived from the operation of the trust property but that upon her death her allotted share of the principal of the estate "should be transferred and distributed as she may by will direct," the death of the daughter terminated her relationship under the trust and worked an immediate elimination of her allotted share in the principal of the estate from the control of the trust and trans-

ferred the same to her devisee; and her devisee became a tenant in common of the property with the trustee.

[2] ID.—DEATH OF TRUSTEE — RIGHTS OF DEVISEE. — In such a case, upon the death of the daughter of the decedent, who was a trustee under his will, all the rights and interests which she had in the trust property by reason of being such trustee came to an end and did not descend to her devisee.

[3] ID.—INTEREST OF WIDOW—SUCCESSION TO DAUGHTER—STATUS OF. Where the decedent in such a case transferred the bulk of his property to trustees for certain purposes, but the widow claimed and received her community interest in the property instead of taking under the trust, the widow thereby become a tenant in common with the trustees of the property, as did the daughter as to the part of the property which she took as an heir of her mother.

[4] ID.—CONSTRUCTION OF WILL—CONTINGENT REMAINDERS.—From a construction of the will in this case it is held that, under the trust therein created, the right and interest of a daughter of the decedent, to which she, as one of the heirs, would succeed in the event of one or more of her coheirs dying without issue or without making such testamentary disposition as they were entitled to make under the will, were contingent remainders existing at the time of said daughter's death and to which her sole devisee would be entitled under her will; and that such contingent remainders would be defeated by the death of certain coheirs leaving issue and by the making of testamentary disposition by others.

[5] ID.—RIPENING OF ESTATE—RELATION OF PARTIES.—In such a case, if the interests of the daughter of the decedent represented by the contingent remainders had ripened, during her lifetime, through the death of any one or more of her coheirs under circumstances which would have called such contingent remainders into being, she would not have, as to these rights, become a *cestui que trust* under the trust estate, but only a tenant in common as to such remainders with the trust estate, and her sole devisee could not in the nature of things become vested with any greater or different interests.

[6] ID.—TRUST ESTATE—TENANT IN COMMON—VACANCY IN TRUSTEESHIP—RIGHT OF TENANT IN COMMON.—A tenant in common of property, the remaining undivided interest in which is held in a trust estate, the trusteeship of which has become vacant, is not entitled of right to participate in proceedings in the Superior Court having jurisdiction over such trust instituted for the purpose of filling such vacancy, or to receive notice of such proceedings before such court or the judge thereof can acquire jurisdiction to proceed to fill such vacant trusteeship.

[7] ID.—TENANTS IN COMMON—NATURE OF TITLE.—The only unity of tenants in common in the property held by them as such by several and distinct titles is that of possession.

[8] ID.—VACANCY IN TRUSTEESHIP—APPOINTMENT—RIGHT IN TENANT IN COMMON AND REMAINDERMEN.—In such a case, the widower of the daughter of the decedent secondly mentioned in his will, who was her sole devisee, occupies no such relation to the trust or to the trust property as would entitle him, either as tenant in common or as successor to his wife in the contingent remainders provided by the trust, to maintain, as a matter of right, an action or proceeding instituted by him as plaintiff against the beneficiaries of the trust for the appointment of a successor to the vacant trusteeship therein; nor is he entitled to receive notice of proceedings instituted by the beneficiaries among themselves for the appointment of a trustee to such vacant trusteeship, such notice to him not being a prerequisite to the jurisdiction of the Superior Court to make such appointment.

[9] ID.—MORTGAGEE—APPOINTMENT OF TRUSTEE.—A corporation holding mortgages on trust property to secure indebtedness created under order of court by the trustee is neither entitled to notice of a proceeding for the appointment of a trustee nor to be consulted in such appointment.

[10] ID.—APPOINTMENT OF RECEIVERS.—There is no provision in the statutes relating to the appointment of receivers which imposes a jurisdictional requirement that other parties than the necessary and proper parties to the action or proceeding in question must be brought in as parties thereto or must receive notice of the application for the appointment of the receiver.

---

(1) 39 Cyc., p. 237, n. 65 New, p. 270, n. 22.    (2) 39 Cyc., p. 270, n. 26.    (3) 38 Cyc., p. 7, n. 27; 40 Cyc., p. 1990, n. 84 New.    (4) 40 Cyc., p. 1672, n. 47, p. 1673, n. 50.    (5) 39 Cyc., p. 237, n. 65 New.    (6) 39 Cyc., p. 287, n. 52.    (7) 38 Cyc., p. 3, n. 1.    (8) 32 Cyc., p. 610, n. 79 New; 39 Cyc., p. 287, n. 49, 52.    (9) 32 Cyc., p. 629, n. 1; 39 Cyc., p. 287, n. 52.    (10) 34 Cyc., p. 107, n. 7, p. 116, n. 72 New.

APPLICATION for a Writ of Prohibition to prevent further proceedings upon a certain judgment. Thomas F. Graham, Judge. Writ denied.

The facts are stated in the opinion of the court.

Sullivan & Sullivan and Theo J. Roche, Tobin & Tobin and Geo. A. Clough for Petitioners.

C. F. Hanlon, Louis S. Beedy, J. W. Dorsey and Thomas, Beedy & Presley for Respondents.

RICHARDS, J.—This is an application for a writ of prohibition to be directed against respondents herein, the Superior Court of the State of California in and for the City and County of San Francisco, and the Honorable Thomas F. Graham, one of the Judges of said court, prohibiting said court and the Judge thereof from further proceeding upon a certain judgment made and entered by said court and from taking any further steps for the enforcement thereof, and of an order made by said court appointing one Louis S. Beedy general receiver of the real and personal property belonging to that certain trust estate to which said judgment relates, and further directing that said judgment and all proceedings had or taken thereunder, including said order appointing said receiver, be vacated and annulled and that said Superior Court and the Judge thereof be directed to permit the petitioners herein to file their respective complaints in intervention in said action and to be heard upon the merits thereon.

The action in which the foregoing proceedings were had and taken by said court was one wherein James Clay Dunphy, Mary Dunphy Flood, and Viola C. C. P. Burnett are plaintiffs, and one William Wesley Burnett, Jr., is the sole defendant, and which action was commenced in said court for the purpose of having the said plaintiffs therein appointed trustees of certain real and personal properties lying and being within the states of California and Nevada, and which properties were subject to a certain trust created and existing under the terms of the last will and testament of one William Dunphy, deceased, the trusteeships over said trust having become vacant by the death of those persons who had been originally appointed the trustees thereof under the terms of said will.

The undisputed facts upon which the merits of this proceeding are to be considered and determined may be summarized as follows: On September 17, 1892, William Dunphy died testate in San Francisco, California, being at the time of his death a resident therein, and leaving a large estate, both real and personal, in the states of California and Nevada. A considerable portion of his said holdings consisted of the .

so-called Dunphy ranch in the state of Nevada, consisting approximately of 160,000 acres of land, together with a large amount of personal property located thereon, consisting of cattle, horses, farming implements, and utensils of great value. At the time of his death said decedent left surviving him as his sole heirs at law his wife, Carmen U. Dunphy, his three children, James Clay Dunphy, Mary Dunphy Flood, and Jennie C. Dunphy, and also a grandchild, daughter of a deceased daughter, Viola C. C. P. Burnett. By his will the decedent, after making certain specific bequests, devised and bequeathed the entire residue of his estate to his wife, Carmen U. Dunphy, and his daughter, Jennie C. Dunphy, in trust for the following purposes and with the following powers: The said trustees were to take full control and possession of all of the properties, real and personal, of said decedent and were to manage and conduct the same. They were to sell and convert into cash the personal property of said decedent in the county of Monterey, California, and also the real and personal property in the state of Nevada as soon as practicable and for the best price obtainable, and were to invest the proceeds of such sales in real estate in the city and county of San Francisco, California, improved and unimproved; and if unimproved, sufficient money was to be retained to improve such investments so that the property would be made to produce a steady and reasonable income. The net income of the decedent's entire estate, in whatever form the latter was or continued to be or take, was to be divided into five equal shares. One-fifth of said income was to be paid quarterly to the decedent's said widow during her life, and upon her death one-fifth of the said principal of his estate was to be transferred and distributed as his said widow should by will direct, or in case she should make no such direction said one-fifth thereof was to go to the decedent's heirs at law. One-fifth of said income was to be paid quarterly to his daughter Mary Dunphy Flood during her life. Upon her death one-fifth of the said principal of his estate was to go to her children, or if she should leave no child said one-fifth was to go to the decedent's heirs at law. One-fifth of said income was to be paid quarterly to his son James C. Dunphy during his life and at his death one-fifth of the said principal of his estate was to be paid as his said son might by will direct, and if he should make no

such direction the same was to go to his children, and if he should leave no child, said one-fifth was to go to the decedent's heirs at law. One-fifth of said income was to be paid quarterly during her life to his daughter Jennie C. Dunphy and at her death one-fifth of said principal of his said estate was to be transferred and distributed as she might by will direct, and if she should make no such direction it was to go to her children, or if she should leave no children then to the decedent's heirs at law. The remaining fifth of said income was to be paid to his said daughter Jennie C. Dunphy, to be by her applied to the support and maintenance of his said granddaughter Viola while she should remain in the custody of the Dunphy family during her minority, and thereafter one-fifth of said income, less certain deductions, were to be paid to her quarterly during her life, and upon her death one-fifth of the principal of decedent's estate was to go to her children, or, if she should leave no children, then to the decedent's heirs at law. The will further provided that in case the widow of said decedent should elect not to take under said will, but to claim her share of the community property of said estate, then and in that event the balance of the decedent's said estate should go to the trustees and be divided into four equal parts among his said children and grandchild upon the same terms, conditions, provisions, and limitations as are above set forth. By the terms of said will his trustees were given full power and authority to make any and all sales, investments, and outlays in respect to said trust property without applying to any court or judge for leave so to do, and without being required to offer or produce in any court vouchers for said outlays or for any acts and deeds performed or expenditures made by them, and that such outlays, acts, deeds, and expenditures were to be deemed proper and necessary, and the propriety and necessity thereof were never to be questioned. In the event of the death, absence, or inability of either of said trustees to act, the other of them was to act and serve alone with all the powers given to both. The trustees were also by the terms of said will made the executrices thereof without bonds. Said will was admitted to probate, shortly after decedent's death, in the Superior Court of the City and County of San Francisco. The widow elected not to take under the will, but to take one-

half of the residue of said estate, all of which was community property. The principal administration of said estate was conducted in the state of California, but ancillary administration thereon was also had in the state of Nevada, covering the property, both real and personal, situate therein. At the conclusion of the administration in Nevada a final distribution was therein made and entered distributing one-half of the residue of the decedent's estate therein located to Carmen U. Dunphy, surviving widow of said deceased. and the remaining one-half to Carmen U. Dunphy and Jennie C. Dunphy as trustees, in accordance with the trust provisions contained in said will. Thereafter Carmen U. Dunphy died, leaving her property to be succeeded to by her said three children and grandchild in equal shares. An administration of her estate was had in the state of California and an ancillary administration thereon in the state of Nevada, as a result of which the distribution of her estate was made to her surviving children and grandchild as above stated. Final distribution in the estate of William Dunphy, deceased, in California was not decreed until after the death of Carmen U. Dunphy, and in consequence thereof the decree of distribution therein made distributed the remaining undivided one-half of the estate to Jennie C. Dunphy as surviving trustee thereof in accordance with the terms of the trust created by the will of William Dunphy, deceased. After the death of Carmen U. Dunphy partition proceedings were instituted in the state of Nevada affecting the aforesaid properties located in said state, and these resulted in the partition of said properties, by the terms of the decree in which proceedings one-half of the said Dunphy ranch, consisting approximately of 80,000 acres, was set apart in severalty to said Jennie C. Dunphy as the surviving trustee of said trust, and the remaining one-half of said ranch property was divided into four parcels, each containing 20,000 acres, each of said children and grandchild receiving one of said parcels. The personal property upon said real estate was also partitioned, as a result of which Mary Dunphy Flood and Viola C. C. Piercy, who had by marriage become Viola C. C. P. Burnett, each received their proportionate share of said personal property. As to James Clay Dunphy, his interest in said personal property had theretofore been acquired by the trustees, and in consequence

thereof the trust estate was awarded an undivided five-sixth interest in said personal property. The individual interest of Jennie C. Dunphy therein was not partitioned, although she was declared entitled to an undivided one-sixth interest therein. In the meantime Jennie C. Dunphy had married X. Rodwell Meyer, who is one of the petitioners herein, and under said name continued to conduct the operations of said trust, in the course of which, through leases of the portions of the said ranch which had been set off in severalty as above set forth, she succeeded in keeping intact the said ranch properties in the state of Nevada, and in operating and conducting the same, involving the employment of many persons and the expenditure of large sums of money, to the extent that during the administration of her said trust it became necessary to borrow the sum of $200,000. Accordingly, in proceedings instituted in the courts of Nevada by her acting as such trustee, she was given permission as such to make said loans and to execute a mortgage or mortgages upon the Dunphy ranch properties belonging to said trust; whereupon the said sum of $200,000 was borrowed from the Hibernia Savings and Loan Society of San Francisco in two loans of $100,000 each, and mortgages upon said properties as security therefor were duly executed and delivered to said mortgagee by said surviving trustee. Jennie C. Dunphy Meyer died on January 25, 1926, having up to the time of her death continued to act and serve as the surviving trustee of said trust. She left a last will and testament, by the terms of which, having left no issue, she devised and bequeathed the entire residue of her estate, after making certain specific bequests, both real and personal, to her surviving husband, X. Rodwell Meyer, who was also made the sole executor of her said will, and who, after due proceedings had in the matter of the probate thereof, was by the Superior Court of California in and for the City and County of San Francisco duly appointed such executor and duly qualified and continued thereafter to act as such. After the death of Jennie C. D. Meyer and the creation thereby of a vacancy in the trusteeship created by the will of William Dunphy, deceased, and after the appointment and qualification of X. Rodwell Meyer as executor of the will of Jennie C. D. Meyer, deceased, X. Rodwell Meyer commenced an action in the Superior Court of the State of

California in and for the City and County of San Francisco, on March 12, 1926, wherein he named himself as the plaintiff, both individually and as executor of the last will of his wife, and wherein he named as the defendants James Clay Dunphy, Mary Dunphy Flood, Viola C. C. Piercy Burnett, William Wesley Burnett, Jr., and the Hibernia Savings and Loan Society, for the purpose of procuring a judgment of said court appointing a trustee of said trust to fill the vacancy therein caused by the death of Jennie C. D. Meyer. The defendants in said action, after due service of process therein, with the exception of the defendant corporation, appeared in said action and filed their demurrer to said complaint. The complaint was thereupon amended, and it was thereupon agreed and stipulated by the aforesaid parties to said action, other than said defendant corporation, that the demurrer of said defendants presented to the original complaint should stand as their demurrer to the amended complaint. In the meantime and on April 15, 1926, James Clay Dunphy, Mary Dunphy Flood, and Viola C. C. P. Burnett, as plaintiffs, commenced an action in the same Superior Court, naming as the sole defendant therein William Wesley Burnett, Jr., in which action said plaintiffs also sought to have entered a judgment of said court appointing a trustee or trustees of said trust estate in the place and stead of Jennie C. D. Meyer, deceased, each of said plaintiffs nominating and appointing each of their said coplaintiffs to be and act as such trustee or trustees. Neither the said X. Rodwell Meyer nor the said Hibernia Savings and Loan Society was made a party to said action or was served with any process therein. Thereafter and on or about May 6, 1926, X. Rodwell Meyer, individually and as executor of the will of Jennie C. Meyer, deceased, gave notice to the plaintiffs in said action, both as plaintiffs therein and as defendants in the action theretofore instituted by him, of a motion for an order to be made therein consolidating said last-named action with that theretofore commenced by him, which said motion came on regularly for hearing before said Superior Court in Department No. 10 thereof, Honorable Thomas F. Graham, Judge therein, presiding, which said motion was argued and submitted for decision, and on September 1, 1926, denied. On said sixth day of May, 1926, the Hibernia Savings and Loan Society, also served upon the attorneys for the plaintiffs in

said last-named action a notice of motion for leave to become and be made a party to said action, to wit, a defendant therein and to be permitted to appear in whatever proceedings were thereafter to be taken therein for the appointment of a trustee or trustees and for such other purposes as were embraced in said action, said motion being made upon the ground that said corporation was the owner and holder of the aforesaid promissory notes and mortgages upon said trust estate and was for that reason interested in the matter of the appointment of a trustee or trustees therein. Said motion came on for hearing in due course in said court before Honorable Thomas F. Graham, Judge thereof, and having been argued and submitted was on the first day of September, 1926, denied by said court. On May 17, 1926, X. Rodwell Meyer, individually and as executor of the last will of Jennie C. D. Meyer, deceased, served upon the plaintiffs in said last-named action a notice of motion for leave to intervene in said action, and filed therein a complaint in intervention, a copy of which accompanied said notice of motion. A hearing thereon was regularly had before said court upon said motion, which was on September 1, 1926, denied. On August 27, 1926, the said Superior Court in the first above-named action instituted by the petitioner herein X. Rodwell Meyer, individually and as executor of the will of Jennie C. D. Meyer, deceased, entered its order sustaining the demurrer interposed by the defendants therein to the amended complaint, with leave to the plaintiff within ten days thereafter to further amend the complaint. The plaintiff, however, neglected and declined to further amend the complaint. On September 1, 1926, by consent of the plaintiffs and defendant in the action of *James C. Dunphy et al.* v. *William Wesley Burnett, Jr.*, the trial of said action was brought on for hearing before said court over the protest of X. Rodwell Meyer and of the Hibernia Savings and Loan Society, each of which parties had theretofore vainly sought to become parties to said action, and who attempted to appear therein for the purpose of objecting to the jurisdiction of said court to further proceed therein or to appoint a trustee or trustees therein until the said protesting parties should be permitted to appear therein and afforded the opportunity to examine the applicants for appointment as such trustees. The trial court overruled their objections and pro-

tests upon the ground that they were not interested parties in said action, and, having done so, proceeded with the trial thereof, as a result of which a judgment was made and entered therein appointing James C. Dunphy, Mary Dunphy Flood, and Viola C. C. P. Burnett trustees of said trust, and conferring upon them, and each of them, full authority and power to manage and control said trust properties in conformity with the terms and provisions of said will of William C. Dunphy, deceased, creating said trust. The trial court also in said action and upon the application and consent of the plaintiffs and defendants therein, and over the protest of the petitioners herein, proceeded to appoint one Louis S. Beedy as a receiver of the trust properties involved in said action. Said Louis S. Beedy having qualified as such receiver under said appointment is proceeding to exercise the powers and functions of said receiver over the properties of said trust in the state of California and in the state of Nevada. In the meantime and on September 2, 1926, X. Rodwell Meyer, individually and as executor of the will of his deceased wife, commenced an action in the district court of the fourth judicial district of the state of Nevada, having jurisdiction over the properties involved in said trust, in which action Mary Dunphy Flood, James Clay Dunphy, Viola C. C. P. Burnett, William Wesley Burnett, Jr., and the Hibernia Savings and Loan Society are named as defendants, which action has for its purpose the appointment of a trustee of said trust and of the trust property thereof located in the state of Nevada, and has procured an order of said court appointing one George Russell, Jr., temporary trustee of said trust, with power to take possession and administer said trust property in said state, and who has qualified as such trustee and is undertaking to exercise said trust. Proceedings have been commenced by the trustees appointed by the respondent court herein in the supreme court of the state of Nevada, whereby they are seeking to avoid, vacate, and have set aside the appointment of said Russell as such temporary trustee, and they have secured in such proceeding a temporary restraining order preventing said Russell from further exercising the powers and functions of a trustee with respect to said trust property in said state.

The present proceeding was instituted in this court on October 18, 1926, by the filing of the application for a writ of prohibition herein and in which application the foregoing · facts and proceedings are fully set forth. The respondents herein have filed both a demurrer and an answer, but as to the latter it presents no issues essential to the determination of the questions of law presented by the demurrer or necessary to the determination of this entire proceeding upon the merits thereof.

The primary inquiry herein in so far as the right of the petitioner Meyer, both in his personal and representative capacity, exists, relates to the nature of the several rights and interests which his deceased wife, Jennie C. Dunphy Meyer, had in the properties which were owned by her father, William Dunphy, and which were referred to and sought to be disposed of by his last will. The rights and interests of Jennie C. Dunphy therein which she held or occupied after the death of her said father were of a fourfold character: First, there was her right and interest therein as a *cestui que trust* under the terms of said will, and which under the terms thereof she was entitled to dispose of by will; second, there was her right and interest therein, or in so much thereof as became subject to the trusts created by said will in her capacity of trustee of such trusts under the terms of said will; third, there was her right and interest in so much of the community property of her deceased father as became the property of his widow, her mother, under the latter's election not to take under her husband's will, but to claim her undivided one-half of her said community property as his wife and surviving widow, and which property so claimed and taken she left upon her death in equal shares to her said children, of whom Jennie C. Dunphy was one; fourth, the right and interest which Jennie C. Dunphy as one of the heirs of William Dunphy would succeed to in the event that certain of her coheirs should die without issue or without direction by will as to the disposition of their respective shares in the properties of the Dunphy estate on the part of those of their number who were entitled to make such testamentary disposition under the terms of their father's will. It is conceded that the petitioner herein, X. Rodwell Meyer, either personally or in his representative capacity, has no other right in the remaining properties of William Dunphy, de-

ceased, than those which he has derived from his deceased wife Jennie C. Dunphy Meyer as the sole devisee under her last will and as the executor of said will, and that whatever right he may have or assert to participate in any proceedings having for their purpose the selection of a trustee or trustees to fill the vacant trusteeships over the still existing trust, and the properties covered thereby; created by the will of William Dunphy, deceased, must have been derived from the foregoing source or sources alone, viz., those rights and interests to which he has succeeded as the sole devisee of his said wife under her last will or as the executor thereof. This being so, let us proceed to consider each in turn the nature, extent, and determination of the foregoing fourfold interests which Jennie C. Dunphy had during her lifetime in the properties of her father's estate. [1] First, as to her right and interest as one of the *cestui que trustents* under her father's will it may here be said that whatever the nature and extent of those rights, interests, and estates may have been while she was living, these have been changed by her death into rights, interests, and estates of an entirely different character. This change has been effected by and under the express terms of her father's will which provided in substance that she was to receive as a *cestui que trust* under the provisions of said will her allotted share of the income to be derived from the operation of such of his properties as came within the terms and control of said trusteeship, but that upon her death her allotted share of the principal of his estate "should be transferred and distributed as she may by will direct." There would seem to be no room for doubt that the above provision in the will of William Dunphy, deceased, would upon the death of his said daughter become effectual to terminate her relation as a *cestui que trust* under the aforesaid trust provisions of his said will and to work an immediate elimination of her allotted share in the principal of his estate from the control of said trust and to transfer the same and all right, title, and interest theretofore held, owned, and exercised by the trustees of said trust to those who were to be the beneficiaries under her will. It follows necessarily that as to the undivided one-fourth interest which Jennie C. Dunphy had as a *cestui que trust* in the income arising from the operations of said trust her right and relation thereto ended with her death, and in place and stead thereof there arose

and existed in her devisee the right to and ownership of an undivided one-fourth interest in the properties of said estate which has theretofore been subject to said trust, but which were released therefrom by the demise of the former *cestui que trust* of the income thereof. Her devisee thus became not. a *cestui que trust* under said will, but a tenant in common with said trust and with the trustees thereof to the extent of an undivided one-fourth interest in the properties, real and personal, which prior to the death of his testatrix had been controlled by and subject to said trust. [2] Second, as to the rights and interests which Jennie C. Dunphy owned, held, and controlled in her capacity as one of the trustees, and later as a sole trustee under the will of her deceased father and under the terms of the trust created thereby, it must be conceded that these have fully ceased and come to an end by her demise and that none of her aforesaid rights and interests as trustee under said will have in any degree descended to or been succeeded to by her said devisee. [3] Third, as to those rights and interests in the properties and estate of William Dunphy, deceased, to which his widow claimed and had been allowed an undivided one-half as her community share thereof, and to an undivided one-fourth of which Jennie C. Dunphy succeeded as one of the heirs of her mother upon the latter's decease, Jennie C. Dunphy became to the extent of her inherited interest therein, as her mother before her had been, a tenant in common with the trustees in their ownership of that remaining portion of the properties of William Dunphy, deceased, which had come within the provisions of their trust; and she remained such tenant in common to the extent of her said undivided interest until her death, whereupon her said sole devisee succeeded to her said interest in the same capacity and not otherwise. [4] Fourth, as to those rights and interests to which Jennie C. Dunphy as one of the heirs of William Dunphy, deceased, would succeed in the event of one or more of her coheirs dying without issue or without such testamentary disposition as certain of them were entitled to make under the terms of their father's will, there would seem to be no doubt that these were remainders, existing in Jennie C. Dunphy at the time of her death, and to which her sole devisee would become entitled by the terms of her will; but though remainders these and each of them were

and are at most merely contingent remainders and as such subject to be defeated by the death of certain of the coheirs leaving issue and by the making of testamentary dispositions by others of them entitled to so dispose of their interest in their father's estate. With respect to contingent remainders somewhat similar to these this court has held that a devise of a contingent estate to come into being only in the event of the devisee of the fee dying without leaving heirs, while termed a contingent remainder under our code, was rather in the nature of an executory devise at common law which did not require any precedent estate to support it but which could not of necessity arise at the death of the testator but only at the termination of the precedent interest, and when the contingency ceased to exist. (*Jewell* v. *Pierce,* 120 Cal. 79 [52 Pac. 132].) In the later case of *Estate of Wilson,* 184 Cal. 63 [193 Pac. 581], wherein a like devise of an estate contingent upon a prior devisee dying without heirs was interpreted, it was held that such estate and who were the owners thereof were to be determined as of the date of the death of the life tenant and termination thereby of the precedent estate. The rule laid down in these cases applies with even stronger force to the peculiar facts of the instant case, since the precedent interest of each of the children of William Dunphy, as we have seen, was not, during the lifetime of each, a direct interest in the *corpus* of the ancestor's estate but only in the income thereof and with respect to which *corpus* of the estate the remainder to which said Jennie C. Dunphy could only contingently succeed was one which for the first time would come into being when her coheir died without leaving issue, or, if entitled so to do, making a testamentary disposition of the share in the *corpus* of the estate, to the income of which only such coheir was entitled during his or her lifetime in the capacity of a *cestui que trust* of the trust estate.

[5] In the event that any one or more of these contingent interests had ripened during the lifetime of Jennie C. Dunphy through the death of any one or more of her coheirs under circumstances which would have called such contingent remainder or remainders into being she would not have, as to these, become a *cestui que trust* under the trust estate according to the terms of her father's will, but only a tenant in common as to such remainder with the trust estate. Her devisee could not in the nature of things become more

than this even though (which is not the case) such estate
or estates in remainder had become vested through the
termination of the precedent interest under circumstances
which would have called them into being. It follows of
necessity that the only interest which the petitioner herein,
X. Rodwell Meyer, has either individually as sole devisee, or
officially as executor under the last will of his deceased wife,
is at best none other than that of a tenant in common with
the trust estate of those properties of William Dunphy and
of his wife and. widow, Carmen Dunphy, with relation to
which Jennie C. Dunphy Meyer was during her own lifetime
such tenant in common or with relation to such portion of
which as said Jennie C. Dunphy Meyer, by her will, made
in conformity with her father's bequest, created her husband
a tenant in common therein. X. Rodwell Meyer in his por-
tion of the petition herein expressly alleges that he has
succeeded to ''an undivided one-fourth interest in and to
the eighty thousand acres of said ranch owned and operated
by said trust at the time of the death of said Jennie Carmen
Dunphy Meyer.'' It is true that he also alleges that he is the
owner of the contingent interests above referred to, but as to
these, as we have seen, they have not yet ripened and may
never ripen into a present estate and when, if ever, they do
so ripen, such estate or interest as would then arise would
amount to no more than merely the interest of a tenant in
common with such trust in the *corpus* of the remaining
properties subjected to such trust. We are not, therefore,
called upon to pass upon the respondent's contention that the
said petitioner is seeking remedies in this proceeding upon
a statement of other matters than those considered by the
Superior Court in making its several rulings which said
petitioner is herein assailing, since at most said petitioner is
none other than a tenant in common with said trust in the
properties which are subject to its provisions.

[6] We are thus brought to the inquiry as to whether a
tenant in common of property, the remaining undivided
interest in which is held a trust estate, the trusteeship
of which has become vacant, is either entitled of right to
participate in proceedings in the Superior Court having
jurisdiction over such trust instituted for the purpose of
filling such vacancy, or is entitled to notice of such proceed-
ings before such court or the judge thereof can acquire

jurisdiction to proceed to fill such vacant trusteeships. We are satisfied that both upon reason and authority these questions must both be answered in the negative. A tenant in common has as such no interest in the title of his cotenant to property held by them and each of them in that relation. [7] It is hornbook law that the only unity of tenants in common in the property held by them as such by several and distinct titles is that of possession. (2 Blackstone's Commentaries, 191.) We are cited by the petitioners herein to no authority which goes to the extent of holding that a tenant in common in property, the other undivided interest wherein is held and owned in trust for the benefit of other persons than said tenant in common, has such an interest therein as would entitle him as a matter of right to dominate, dictate, or participate in proceedings for the appointment of trustees to be charged with the administration of such trust. On the other hand, we are cited by the respondents herein to cases arising in jurisdictions having laws relating to the creation and administration of trusts similar to our own which hold that a tenant in common with a trust in the ownership of property has no right as such to participate in or even to have notice of proceedings in a proper court for the appointment of trustees to fill existing vacancies in the trusteeship of such trust. The leading case upon this subject is that of *Greene* v. *Borland,* 4 Met. (45 Mass.) 330. In that case of testatrix created a trust over an undivided one-half of her property and estate, naming certain trustees thereof in her will. The other one-half of her said property and estate she devised in fee to her son, whom she also named as the executor of her estate. The trustees named in the will declined to act, whereupon the court appointed one Quincy as succeeding trustee and the latter brought suit against the son as tenant in common in possession of the whole property for an accounting. The son undertook to defend said suit upon the ground that the court had no jurisdiction to appoint such trustee without notice to him as such tenant in common. Under the Revised Statutes of the state of Massachusetts the court having jurisdiction over trusts "shall *after notice to all persons interested* appoint a new trustee." The court with this provision in mind held that the appointment of the trustee was valid as having been made with the consent of all parties interested in the trust and that the

defendant, either as a tenant in common in the property or as executor of the estate, was not a person in interest legally entitled to notice in order to give validity to the appointment of the trustee. In the case of *Dexter* v. *Cotting,* 149 Mass. 92–95 [21 N. E. 230], the supreme court of that state held that the phrase "persons beneficially interested in the trust" referred only to such parties as had a present vested interest in the trust fund and was not intended to include contingent remaindermen who might possibly become interested in the future. In the case of *Matter of Earnshaw,* 196 N. Y. 330 [89 N. E. 825], the court of appeal of that state held that under a statute empowering the court to appoint trustees of a vacant trust upon such notice to the beneficiaries of the trust as the court may direct, only those persons who were entitled to the income of the trust during their lives were entitled to such notice and that remaindermen were not entitled to notice of the appointment of trustees. In the case of *Offutt* v. *Jones,* 110 Md. 233 [73 Atl. 629], it was held by the court of appeals of that state that under a statute providing for the appointment of trustees of a trust estate upon the petition of any person interested in the trust property the court had jurisdiction upon the petition of a *cestui que trust* to appoint a trustee, but that the executor of the will or the remaindermen were not such necessary parties that their absence from the proceedings rendered the appointment void. In each of the jurisdictions from which the foregoing cases are cited there are express statutory provisions requiring notice to persons interested in the trust. Section 1702 of the Code of Civil Procedure of this state contains a like provision relating to the filling of vacancies in a trust created by will during the period when administration of an estate is pending, the provision therein being that such appointment may be made by the probate judge "upon the written application of any person interested in the trust filed in the probate proceedings and shall only be made after notice to all persons interested in the trust." It is to be noted, however, that the statute of this state contain no similar express requirement as to notice of other cases and that the only language therein out of which an implication would arise that notice of some sort would be requisite in order to entitle the court having jurisdiction over a trust in an estate,

wherein administration is not pending, to appoint trustees to a vacant trusteeship therein is that provision in section 2287 of the Civil Code permitting *cestuis que trustent* over the age of fourteen years to make nominations to the court having statutory jurisdiction to appoint such trustees. We do not feel called upon herein to interpret such implication since we are of the opinion that even if notice is required in this as in other states having express statutes to that effect, such notice would only be necessary to be given to the *cestui que trustent* under the interpretation given to such statutes in the foregoing cases. [8] We therefore reach the conclusion in this case in disposing of the petition of X. Rodwell Meyer herein that he occupies no such relation to the trust or to the trust property involved in this proceeding as would have entitled him as a matter of right to maintain the action or proceeding instituted by him as plaintiff and against the *cestuis que trustent* of said trust for the appointment of a successor to the vacant trusteeship therein, and that as to whether or not the Superior Court should have sustained the demurrer of the defendants to his amended complaint in that proceeding is not a matter of jurisdiction which is reviewable in the instant proceeding; and that as to the right of said X. Rodwell Meyer, either individually or as the executor of his deceased wife's estate, to receive notice of the proceedings instituted by the *cestuis que trustent* themselves and among themselves for the appointment of a trustee to such vacant trusteeship he had no right to such notice as a prerequisite to the jurisdiction of the Superior Court, the respondent herein, to make such appointment and hence has no right in either his individual or representative capacity to maintain this proceeding. [9] With respect to the right of the Hibernia Savings and Loan Society, a corporation, and the corporation herein to be made a party to the proceedings for the appointment of a trustee over the trust estate upon the properties of which it holds several mortgages for the security of certain indebtedness to it incurred under the sanction of the court procedure by the former trustee, it would seem that but little remains to be said. The sole question presented in the instant proceeding is one of jurisdiction, and however advisable it might be for the court having jurisdiction over a trust estate to consider the interests of a large creditor of such estate in the matter

of the appointment of a successor to a vacant trusteeship therein, we are cited to no authority which renders it incumbent upon such court as a matter of jurisdiction to either notify such a creditor of or admit it to its counsels in making such appointment. We are cited to no authority, either statutory or otherwise, which confers upon a mere creditor or lienholder of a trust estate the right to call into question the jurisdiction of the court having power so to do to appoint trustees or to fill vacancies in the trusteeship of a trust or over the properties wherein the only interest of the party objecting to such jurisdiction is that above stated. As before stated, the questions involved in this proceeding are those of jurisdiction only and not of policy, and with the wisdom or prudence of the action of the respondents herein in the matter of the selection of trustees who are under its direction to administer this trust this court in the instant proceeding has nothing to do.

The only remaining question involved in this proceeding is as to the jurisdiction of the respondent court to appoint a receiver over the properties of the trust estate in a proceeding before it wherein all of the necessary and proper parties to such proceeding concur in the request for the appointment of such receiver. [10] We are advised of no provision in the statute relating to the appointment of receivers which imposes a jurisdictional requirement that other parties than the necessary and proper parties to the action or proceeding in question must be brought in as parties thereto or must receive notice of the consent application for the appointment of the receiver therein. If the receiver thus appointed is given larger powers than he should possess in his capacity as such, or is attempting to exercise powers beyond the proper scope of his appointment, parties who are injuriously affected thereby have ample remedies in the ordinary course of law. We find no merit, therefore, in the petitioners' contention that this court in this limited proceeding should interfere to restrain any threatened act in excess of his authority on the part of such receiver.

The application is denied.

Preston, J., Langdon, J., Curtis, J., Waste, C. J., Shenk, J., and Seawell, J., concurred.