[Civ. No. 17997.   Second Dist., Div. Three.   Mar. 5, 1951.]

Estate of REGINA L. HORN, Deceased.   PAULINE L. SLOSBERG et al., Petitioners and Appellants, v. HENRY HORN, as Administrator, etc., Contestant and Appellant.

Don Marlin, William H. Levit and Richard H. Millen for Petitioners and Appellants.

Fred Horowitz, Abraham Gottfried and Alvin F. Howard for Contestant and Appellant.

VALLÉE, J.—Appeals from an order of the probate court requiring and directing an administrator to inventory property.

Decedent, Regina L. Horn, and Henry Horn (referred to as citee) were married May 4, 1943. Decedent was suffering from incurable cancer which was known to citee but not to decedent. At that time citee had a separate estate of several hundred thousand dollars, and decedent an automobile, a mink coat, some jewelry, some stocks, and a pension of about $100 a month. Mrs. Horn died intestate May 14, 1947. Citee was appointed administrator of her estate.

In the course of probate of the estate, on application of Pauline Lachs Slosberg, sister, and Joseph Lachs, brother, heirs of the decedent (referred to as petitioners), a citation issued ordering the administrator to show cause why he should not inventory and account for certain property. At the hearing petitioners introduced evidence only as to certain items of jewelry, furs, and an alleged $1,000 loan from decedent to citee.

The court found that three items of jewelry, not inventoried, were owned by decedent as her separate property at the time of her marriage to citee and that they remained her separate property to the time of her death. It was also found that six items of jewelry, a gold cigarette case, two fur coats, and a fur scarf, not inventoried, were given to decedent by citee with the intention that each should constitute a gift "and should thereupon become and remain and did thereupon become and remain the separate property of decedent" to the

time of her death, and that a $1,000 loan from decedent to citee was her separate property. Citee was ordered to inventory all of these items as assets of the estate and as the separate property of decedent. All parties appealed from the order.

### Appeal of Petitioners

Petitioners claim that the court erred in not ordering citee to inventory as assets of the estate one-half of all property of decedent and citee owned by them at the date of her death because, so they say, decedent and citee owned it as tenants in common. Petitioners' claim is based on the following occurrences at the hearing. At the time petitioners rested, citee asked the court to discharge the citation as to all property listed in the affidavit for the citation as to which no evidence had been introduced by petitioners. The judge stated that he would not discharge citee "until the final judgment," but that the only items which were in issue were those as to which petitioners had introduced evidence and that "unless you [citee] go ahead voluntarily and put in some testimony of your own that you are liable for more, you won't have to account for more than that in any event." In his opposition to the citation, citee testified that about two weeks after their marriage an oral agreement was made between decedent and himself whereby all property then owned and thereafter acquired by each of them would be held by them in joint tenancy and that the agreement had not been modified. On the completion of citee's testimony, upon request of counsel for petitioners, the issues were enlarged to include ownership of all the property of decedent and citee at the time of the death of decedent. The court found that "there was no agreement between citee and decedent creating a joint tenancy or a community property interest as to all of their property."

Petitioners say that the testimony of citee was not controverted nor inherently improbable; that he is bound thereby; that the court was compelled to believe his testimony; that since the agreement failed because it was not in writing, a tenancy in common resulted, and he should have been required to inventory one-half of all property owned by himself and his wife at the time of her death. We have concluded that petitioners' claim cannot be sustained.

We need not decide whether the court was compelled to believe the testimony of citee as to the agreement. Assuming for the purpose of this opinion only that the court was obliged

to believe his testimony and that decedent and citee intended to create a joint tenancy with right of survivorship, it does not follow that a tenancy in common was created by reason of the failure of a joint tenancy. A joint tenancy (Civ. Code, § 683) and a tenancy in common (Civ. Code, § 685) are separate and distinct estates and are not in anywise interdependent. (*Siberell* v. *Siberell,* 214 Cal. 767, 770 [7 P.2d 1003].) In order that a joint tenancy be lawfully created, it is necessary that there be the four unities of interest, title, time, and possession. The distinguishing incident of a joint tenancy is a right of survivorship. (Id., 771.) A tenancy in common requires for its existence but one unity, that of possession. (*Wood* v. *Henley,* 88 Cal.App. 441, 452 [263 P. 870].) In a tenancy in common between husband and wife, each is vested with an undivided interest in the property. (*Meyer* v. *Superior Court,* 200 Cal. 776, 792 [254 P. 1108].) A joint tenancy may be created only "by a written transfer, instrument or agreement." (*California Trust Co.* v. *Bennett,* 33 Cal.2d 694, 697 [204 P.2d 324].) An oral agreement within a statute requiring a writing is not a contract. It cannot as a general rule furnish the basis for an action for enforcement of its terms. (*Fuller* v. *Reed,* 38 Cal. 99, 109; *Borderre* v. *Den,* 106 Cal. 594, 600 [39 P. 946]; *Vasik* v. *Speese,* 26 Cal.App. 129, 130 [146 P. 61]; *Matheron* v. *Ramina Corp.,* 49 Cal.App. 690, 695 [194 P. 86]; 37 C.J.S. 724, § 224; 49 Am.Jur. 830, § 532.) The oral agreement is unenforcible. (*O'Brien* v. *O'Brien,* 197 Cal. 577, 586 [241 P. 861].) The law will not make valid without a writing that which the law requires to be in writing. The agreement was a nullity. Title did not pass from one to the other. Neither husband nor wife was divested of, or vested with, title to the property of the other. The purported agreement cannot be construed as creating a tenancy in common. The intention was to create a tenancy with survivorship. A tenancy in common was expressly negatived. To construe the purported agreement as conveying or transferring to tenants in common would be a judicial conveyance or transfer of the individual property of the parties in legal effect contrary to their expressed intention.

In support of their contention in this behalf petitioners rely on *Estate of Harris,* 169 Cal. 725 [147 P. 967], *Estate of Harris,* 9 Cal.2d 649 [72 P.2d 873], and *Wheeland* v. *Rodgers,* 20 Cal.2d 218 [124 P.2d 816]. No one of these cases is in

point. In the first Harris case it was held that joint tenancy property may be traced into personal property, and the personal property so acquired with joint tenancy funds will be deemed to be held in joint tenancy in the absence of an agreement to the contrary regardless of the circumstance that title to the after-acquired property may be held by only one of the joint tenants. In the second Harris case it was held that if a *valid* joint tenancy is created between spouses and the husband severs his joint tenancy ownership by taking property purchased with the joint tenancy funds in his name, the spouses thereafter own the property as tenants in common, the husband holding the legal title to a one-half interest in trust for his wife. The Wheeland case held that prior to the enactment of section 15a of the Bank Act (Stats. 1909, p. 87, as amended by Stats. 1921, p. 1367; 1 Deering's Gen. Laws, Act 652), which provides that the making of a bank deposit in the form of a joint tenancy account with the right of survivorship shall be conclusive evidence of the intention of the depositors to vest title in the survivor, the creation by a husband of a joint tenancy bank account merely gave rise to a presumption of a gift to his wife which could be overcome by evidence that no gift was made and that the wife did not become vested with any title. These cases have no application because in the present case a valid joint tenancy was not created.

Petitioners argue that a tenancy in common resulted because of the provisions of section 686 of the Civil Code. The section reads: ''Every interest created in favor of several persons in their own right is an interest in common, unless acquired by them in partnership, for partnership purposes, or unless declared in its creation to be a joint interest, as provided in section six hundred and eighty-three, or unless acquired as community property.'' ▮ Section 686 means that if an estate is conveyed or transferred and it is not expressly declared in the conveyance or transfer to be an estate in joint tenancy, or in partnership for partnership purposes, or unless acquired as community property, it will be held by the grantees or transferees as tenants in common. (*Bowen* v. *May*, 12 Cal. 348, 351; *Estate of Hittell*, 141 Cal. 432, 435 [75 P. 53] ; *Dalton* v. *Keers*, 213 Cal. 204, 207 [2 P.2d 355].) Obviously section 686 does not have the effect of creating a tenancy in common in a case such as the present where it was expressly declared in the attempted transfer to be a joint tenancy.

Prior to the issuance of the order to show cause, citee had inventoried certain personal property of the decedent. Petitioners claim the court erred in not finding the ownership of the previously inventoried property. There was no error. The court, no doubt, will determine this question on the hearing of the petition for distribution on file which alleges that this property is community property, and the exceptions thereto which allege that it is separate property of decedent and not community property. ▮ A proceeding for distribution is a proper one for the determination of questions of title to properties in which the decedent had an interest and which are claimed by the administrator as his own adversely to the estate. (*Estate of Basso,* 68 Cal.App.2d 294, 299 [156 P.2d 476] ; *Estate of Gillett,* 73 Cal.App.2d 588, 600 [166 P.2d 870].)

## *Appeal of Citee*

Citee claims the findings that the jewelry, furs, and the $1,000 loan were decedent's separate property are not supported by the evidence. The claim is without merit. ▮ Three of the items of jewelry were a cocktail ring,. a gold and cloisonné watch, and a charm bracelet. There was evidence that these items were given to decedent by her sister or mother prior to her marriage. There was evidence that the other items of jewelry were given and delivered to decedent by citee as gifts; that they were in her possession and used from the time she received them until her death; that the gold cigarette case bore her initials; one ring was her engagement ring, one a platinum wedding band; one was a birthday and Christmas present; one of the furs was a mink coat given to decedent by citee as a birthday and anniversary gift which she had in her possession with the name "Regina L. Horn" embroidered in the lining; another fur was a sable scarf which citee gave decedent as a going-away present when he went to Europe and left her at home; the other fur was a Persian lamb coat which decedent had in her possession with the initials "R.L.H." on the coat. The law presumes that things which a person possesses are owned by her. (Code Civ. Proc., § 1963, subds. 11, 12.) ▮ If a husband transfers his separate or community property to his wife, the mere fact of transfer raises the prima facie presumption that he intended the transfer to be a gift. (*Dunn* v. *Mullan,* 211 Cal. 583, 589 [296 P. 604] ; *Ballinger* v. *Ballinger,* 9 Cal.2d 330, 333 [70 P.2d 629] ; *Ayoob* v. *Ayoob,* 74 Cal.App.2d 236, 254

[168 P.2d 462]; *Pasadena Trust etc. Bank* v. *Bryson,* 46 Cal.App. 730, 733 [189 P. 816].) The presumption, together with the other evidence, was sufficient to warrant the conclusion that the jewelry and furs were gifts from citee to decedent.

In his closing brief, citee in effect concedes that he gave the jewelry to decedent during her lifetime but contends that the title was changed from her separate property to joint tenancy property by deposit in a joint tenancy safe deposit box.

On May 21, 1943, decedent and citee rented a safe deposit box and signed and delivered to a bank a corenter agreement which read: "We . . . hereby declare and represent that we own, as joint tenants, with the right of survivorship, all of the property of every kind or character now within said box, and that all property which may be deposited therein by either or any of us shall be and is owned by us as such joint tenants." Citee argues that the jewelry was placed in the safe deposit box; that it thereby became joint tenancy property; that although it was removed by decedent in her lifetime and was not in the box at the time of her death, it did not lose its character as joint tenancy property.

While citee testified that each item of jewelry was in the box at one time or another after it was given to decedent and during her lifetime, there was evidence from which the court reasonably could infer that each item was at all times in the possession of decedent and that no one of the items was ever in the safe deposit box. The jewelry was not in the box at the time of decedent's death. It is apparent that the probate court did not deem the testimony of citee sufficient to establish that the jewelry ever had been placed in the box and found against him. In view of the fact that the only person who could successfully contradict his testimony was dead, the court was justified in considering his uncorroborated testimony as weak and unsatisfactory and, in view of the other evidence, insufficient to establish his claim. (*Olson* v. *Olson,* 4 Cal.2d 434, 437 [49 P.2d 827]; *Khoury* v. *Barham,* 85 Cal.App.2d 202, 211 [192 P.2d 823].)

The court found that "On or about April 18, 1947, citee borrowed the sum of $1,000 from decedent; that said loan has never been repaid by citee to decedent and the same was due and owing from citee to decedent at the time of decedent's death; that said loan of $1,000 was the separate property of decedent at the time of her death and was not the

community property of citee and decedent.'' On April 18, 1947, decedent drew a check for $1,000 on a bank account in favor of citee. The account was in her name alone. Apparently it was made up of decedent's separate funds and money given her by citee for household and other expenses. The check had the word "loan" written on it in the handwriting of decedent. Citee cashed the check, received the $1,000 and did not return it. He admitted that on previous occasions he had received checks from decedent drawn on this account and had returned the money. When asked if he had paid the $1,000 "back to her," he answered, "No, I didn't have a chance." The evidence is sufficient to support the findings that the jewelry, furs, and the $1,000 loan were decedent's separate property.

Order affirmed. The parties will bear their own costs on appeal.

Shinn, P. J., and Wood (Parker), J., concurred.

Petitioners and appellants' petition for a hearing by the Supreme Court was denied April 30, 1951. Gibson, J., did not participate therein.