[Civ. No. 20681.   First Dist., Div. Two.   Mar. 14, 1963.]

RANDOLPH I. JOHNSON, Plaintiff and Respondent, v. AUDREY M. JOHNSON, Defendant and Appellant.

Timothy J. Crowley for Defendant and Appellant.

Harrison F. Comstock for Plaintiff and Respondent.

AGEE, J.—Both parties were granted an interlocutory judgment of divorce from the other on the ground of extreme cruelty. Defendant-wife appeals therefrom, contending (1) that the evidence is insufficient to support the finding that she had treated the plaintiff-husband with extreme cruelty, (2) that the trial court abused its discretion in denying further attorney fees to her, (3) that it was error to find that the equity in a house was community property, and (4) that it was error to order that said house be sold to satisfy community debts.

*Defendant's cruelty.* Plaintiff testified as follows: defendant wrote nasty notes to him and pinned them up or pasted them on the walls; she did this more than one hundred times; she would not give plaintiff the keys to the car and he

would have to hitch-hike to work; the parties argued about everything; this got worse toward the end; plaintiff didn't like to be "bawled out" by defendant; defendant ran up bills and bought too many things; plaintiff became upset when defendant bought a grand piano without his knowledge, because it added to their other debts; defendant was "snotty" to plaintiff's mother when the latter visited their home; defendant cursed plaintiff at home and in public and called him a "son-of-a-bitch"; before the separation, defendant wrote out a four-page "Notice of Divorce" and hung it on the kitchen door; it contains many derogatory remarks about plaintiff; plaintiff had received many such writings from defendant during the last few years prior to separation; defendant's conduct made plaintiff upset and nervous; it gave him migraine headaches and stomach trouble; plaintiff did not have these conditions after the separation.

Plaintiff's mother testified as follows: she observed a "lot of nagging and picking going on"; defendant never did anything for plaintiff; she never saw defendant cook for plaintiff; plaintiff fixed his own lunch and did his own laundry; they always had separate bedrooms; the minute plaintiff would walk in they would start fighting and defendant would start picking on him; she would not get up until 1 or 2 o'clock in the afternoon; there was always something defendant did not agree with; defendant screamed at plaintiff; defendant always started the arguments; defendant made it clear that she didn't want plaintiff's mother in the house; defendant's conduct made plaintiff "terribly upset" and he lost weight and had migraine headaches; since the separation plaintiff is a different man.

█ The issue of cruelty is entirely one of fact, and the trial judge has a broad discretion in determining the sufficiency of the evidence in any particular case. (*McFall* v. *McFall* (1943) 58 Cal.App.2d 208 [136 P.2d 580]; *Keener* v. *Keener* (1941) 18 Cal.2d 445 [116 P.2d 1].) █ We find it to be sufficient in the instant case.

█ *Attorney fees.* Plaintiff commenced this action on May 1, 1960. Defendant filed a cross-complaint on May 20, 1960, and on July 15, 1960, plaintiff was ordered to pay defendant $175 attorney fees and $25 court costs. Following the trial, which consumed one and one-half days, the court made the following finding: "That it is not true that defendant is without the means of her own to pay her attorney's fees and costs incurred herein." This conclusion followed:

"That neither plaintiff nor defendant is entitled to have his or her attorney's fees paid by the other party."

Defendant testified that she owned and operated a business known as "Terry's Unfinished Furniture." This business was opened on July 27, 1960, after the parties had separated. Defendant's mother and her two sisters put up $600 to start the business. At a preliminary hearing, held on March 17, 1961, defendant testified that she was receiving 15 per cent of the gross sales and that this averaged only $47 per month, indicating monthly sales of approximately $315 per month. However, at the trial held on October 25, 1961, defendant testified that the sales for April, May and June 1961 averaged $1,145 per month; that she did not know whether the sales for July, August and September 1961 were or were not down from the previous three months. She was anything but cooperative in revealing the financial condition of the business but did admit that it was improving.

In addition to her income from the business, defendant was receiving $100 per month support money for a child by a prior marriage and $60 per month for caring for a foster child. Plaintiff was ordered to pay defendant $75 per month for the support of their minor child.

The interlocutory decree awarded all of the community personal property, consisting of the equity in a 1959 Mercury automobile, a 1952 Nash automobile, and the household furniture and furnishings, to the defendant.

As defendant admits in her brief, the issue here is a matter of discretion with the trial court. We cannot say as a matter of law that such discretion was abused by the denial of further attorney fees, particularly in the light of the court's finding that "both plaintiff and defendant have treated each other with extreme cruelty."

*Equity in house.* Both parties had alleged in their respective pleadings that the house was community property. Thereafter, however, plaintiff executed and delivered a quitclaim deed thereof to the defendant.

At the commencement of the trial, *plaintiff* injected the issue as to whether the property had now become separate or had remained community. On direct examination, as soon as plaintiff's counsel started to question him about the matter, defendant's counsel objected, stating: "I am claiming, Your Honor, at this time, that the question of the house is moot and is an issue that should not be raised at the present time; that is, as to the title of this piece of real property."

Following a discussion between the court and counsel, the

following statement was made: "Mr. Comstock [attorney for *plaintiff*] : Further, Your Honor, this Court has the power to determine whether the property is community or separate property and the creation of the community, and I am trying to elicit from this witness the witness' intent."

The trial court ruled that the presumptions arising from the execution and delivery of the deed were, as between the parties, rebuttable. Defendant's objections were overruled on this ground.

The pleadings were never mentioned or relied upon by plaintiff. The case was tried upon the theory that the issue as to the character of the property was in dispute. We shall treat it likewise.

The only testimony that would support a finding that the property remained community is that of the plaintiff. He testified that the deed was for the "purpose of refinancing the place so we would not lose it, I believe. . . . I had no intent to make a gift of it, of the house."

Plaintiff admitted that, at the time he executed the deed, the payments due under the first and second deeds of trust on the property were in arrears and that back taxes thereon were delinquent. He further admitted that he had not made any payments on these obligations since he left the home in May, 1960, some seven months prior to the execution of the deed. At that time there was a total of $15,800 due on the first and second deeds of trust. The parties had purchased the house two years before their separation for $10,500.

Defendant testified that the property was about to be foreclosed and that she had tried to talk to plaintiff about it but that he "refused to discuss it with me in any way and therefore I gave up trying to contact him altogether." The record indicates very strongly that plaintiff wanted nothing further to do with the property and was glad to divest himself of his equity, if any there was.

Defendant testified as to the purpose of the deed as follows: "In fact that was the only way that the holder of the second deed of trust or the holders were willing to refinance the place in that Mr. Johnson was to be off of the title of the home and they were unwilling to cooperate any longer with Mr. Johnson."

Defendant relies upon section 164 of the Civil Code, which provides that whenever any real property is acquired by a married woman by an instrument in writing it is presumed to be her separate property. Also, if a husband transfers his community property to his wife, the mere fact of transfer

raises a presumption that he intended the transfer to be a gift. (*Estate of Horn,* 102 Cal.App.2d 635, 641 [228 P.2d 99]; *Dunn* v. *Mullan,* 211 Cal. 583, 589 [296 P. 604, 77 AL.R. 1015].) In the instant situation, as defendant admits, "these two presumptions are rebuttable."

Defendant testified that she had never been informed by anyone that plaintiff did not intend to transfer his interest in the property to her. She contends that, if plaintiff had such an intention, it was never disclosed. The record bears this out.

The two presumptions referred to above cannot be overcome by testimony of a hidden intention of the grantor not disclosed to the grantee at the time of the conveyance. (*Socol* v. *King,* 36 Cal.2d 342, 346 [223 P.2d 627]; *Gudelj* v. *Gudelj,* 41 Cal.2d 202, 212 [259 P.2d 656]; *Watson* v. *Peyton,* 10 Cal. 2d 156, 158 [73 P.2d 906]; *Machado* v. *Machado,* 58 Cal. 2d 501, 506 [25 Cal.Rptr. 87, 375 P.2d 55].)

Plaintiff has failed to file a brief herein. Rule 17(b) of California Rules of Court* provides that, when this occurs, "the court may accept as true the statement of facts in the appellant's opening brief. . . ." It is stated in said brief that plaintiff had only "a secret mental reservation" not to make a gift of the property to the defendant. We accept such statement as being true. Nevertheless, we are required to consider and we have considered its legal effect. (*Richardson* v. *Rose* (1961) 197 Cal.App.2d 318 [17 Cal.Rptr. 84].)

In our opinion, the evidence is insufficient as a matter of law to overcome the presumptions relied upon by defendant. The lower court therefore erred in finding the house to be community property.

*Order to sell house to pay community debts.* The decree ordered this to be done and awarded to defendant, as a part of the community property, "[a]ny excess resulting from the sale of the above referred to house after payment of the above referred to debts."

Apparently the court was attempting to apply section 146 of the Civil Code, which provides in part, as follows: "Whenever necessary to carry out the purpose of this section, *the court may order a* partition or *sale* of the property *and* a division or other *disposition of the proceeds.*"

However, this section is applicable in the instant action only if the property ordered to be sold is the community prop-

---

*Formerly Rules on Appeal, rule 17(b).

erty of the parties. It expressly provides at the beginning of the section, as follows: "In case of the dissolution of the marriage by decree . . ., the court shall make an order for disposition of the *community property* . . . as follows:"

█ As stated in *Robinson* v. *Robinson*, 65 Cal.App.2d 118, 119 [150 P.2d 7]: "The power of the court in disposing of the property of the parties in a divorce action is limited to their community property."

█ In the instant action, it was error for the court to order the house to be sold.

The interlocutory judgment is affirmed in all respects except as to that portion thereof which orders the house to be sold and community debts to be paid therefrom, as to which portion the judgment is reversed with instructions to the lower court to modify said portion of said judgment by decreeing that the house is the separate property of the defendant and striking therefrom the order that said house be sold.

The parties are to bear their own respective costs on appeal.

Kaufman, P. J., and Shoemaker, J., concurred.