[S. F. No. 4235. In Bank.—December 24, 1908.]

JOHN TAYLOR, as Administrator of the Estate of Albion C. Taylor, Deceased, Respondent, v. HALE McCOWEN, Appellant.

ESTATES OF DECEASED PERSONS—LATENT AMBIGUITY IN WILL AND DE-
CREE OF DISTRIBUTION—EXTRINSIC EVIDENCE.—The same rule which
allows extrinsic evidence to disclose and explain a latent ambiguity
in a will applies to a latent ambiguity in a decree of distribution.

ID.—MISTAKE IN MIDDLE INITIAL OF NAME—EVIDENCE.—When the first
and last names of a distributee, who was the only nephew of the
testatrix, are correctly stated and his residence is correctly given,
both in the will and in the decree of distribution, but by mistake
of the scrivener in preparing the will, an error in the middle initial
of his name occurred in the will, and was carried into the decree,
evidence is admissible to show and explain such mistake, and to
prove that such nephew, with the correct initial, lived and died at
the place of his residence, and that no person having the same
name, with the incorrect initial, ever lived at that place.

ID.—ACTION TO QUIET TITLE OF DECEASED DISTRIBUTEE—MISTAKE IN
DECREE—NATURE OF ACTION—STATUTE OF LIMITATIONS INAPPLI-
CABLE.—An action by the administrator of the estate of a deceased
distributee to quiet title of land distributed against an adverse
claim of the defendant, in which extrinsic evidence is admitted to
show a mistake in the name of such distributee in the decree of dis-
tribution, and to explain a latent ambiguity caused thereby in the
decree, is merely an action to enforce rights under the decree,
according to its true intent and meaning, and is not an action for
relief on the ground of mistake, to which the statute of limitations
is applicable.

ID.—CONDITIONAL LIMITATION IN DECREE—DETERMINATION OF LIFE ESTATE—LEGAL ESTATE VESTED IN POSSESSION.—A decree of distribution vesting a nephew of the testatrix with absolute title to land specified, provided one who was permitted to reside thereon for life did not commence the residence within one year or should cease to reside thereupon, does not create an estate in the life tenant upon condition subsequent, to .be divested in case of forfeiture only by an entry for condition broken or by judgment at law, and not enforceable in equity, but creates a conditional limitation of such estate, and upon her cessation to live upon the land, the absolute property therein immediately vested in the nephew by the act of the law, as an immediate legal estate in possession.

ID.—CONDITION NOT VOID AS REPUGNANT TO ESTATE CREATED.—The conditional limitation is not void as repugnant to the estate previously vested in the tenant for life, with remainder in her heirs at law upon her death, by the decree. The intent expressed in the decree as a whole is controlling, and shows a limitation of that estate.

ID.—TITLE OF TESTATRIX—ADVERSE POSSESSION—ASSESSMENT-ROLLS.—The assessment-rolls showing payment of taxes by the testatrix were properly introduced in evidence in support of a title acquired by her by adverse possession.

ID.—EVIDENCE—DECLARATIONS OF TESTATRIX AS TO RELATIONSHIP.—The declarations of the testatrix as to her relationship to her nephew by his true name and place of residence were admissible under subdivision 4 of section 1870 of the Code of Civil Procedure.

ID.—EVIDENCE OF IDENTITY OF PERSON NAMED IN WILL AND DECREE.—Evidence was admissible to show the facts in regard to the existence and identity of the person named in the will and decree of distribution.

APPEAL from a judgment of the Superior Court of Mendocino County and from an order denying a new trial. J. Q. White, Judge.

The facts are stated in the opinion of the court.

McNab & Hirsch, and T. B. Pond, for Appellant.

T. L. Carothers, for Respondent.

SHAW, J.—This is an action to determine adverse claims to a tract of land. Judgment was given in favor of the plaintiff and an order was made denying the defendant's motion for a new trial. Thereupon the defendant appealed from the judgment and also from the order.

Both parties claim under one Adaline S. Budd, who died on January 10, 1892, seized of the property in question. Upon

the distribution of her estate, in pursuance of the terms of her will, the lands in question were distributed "to Charlotte Budd Armstrong for the term of her natural life, and upon her death to become the property of her heirs at law; upon the condition that the said Charlotte Budd Armstrong shall continue to reside upon said lands for the period of her natural life, and should the said Charlotte Budd Armstrong remove permanently from said lands during the period of her lifetime then and in that case the said lands shall become the absolute property of Albion M. Taylor, of Lowell, Massachusetts." This decree was made on June 7, 1893. The will contained, in addition to the conditions mentioned in the decree, the provision that the said Charlotte Budd Armstrong should take up her residence upon said tract of land within one year from the date of the death of the deceased, Mrs. Budd, and that if she failed to take up her residence on the land within said year, or if she should remove from said land during her natural life, then the property should "become the property absolutely of my nephew Albion M. Taylor, of Lowell, Massachusetts." Within a year after the death of Mrs. Budd, Charlotte Budd Armstrong took up her residence upon said land and continued to reside thereon until April 28, 1899, when she permanently removed from said land and sold and conveyed her interest in the same to the defendant, Hale McCowen. On August 7, 1903, a deed was executed by a person under the name of Albion M. Taylor, which, upon its face, states that he was formerly of Lowell, Massachusetts, and a nephew of Adaline S. Budd, deceased, and the same Albion M. Taylor referred to in the last will of said Adaline S. Budd, whereby the said Taylor by quit-claim conveyed the said property to the defendant. The court found that the said Adaline S. Budd devised the property in question, upon the happening of the condition aforesaid to "Albion C. Taylor of Lowell, Massachusetts, a nephew of said Adaline S. Budd, he being named and designated in said will as Albion M. Taylor"; that Mrs. Budd had no nephew of the name of Albion M. Taylor and never had, and that the insertion of his name in the will was a mistake in giving the name to the scrivener who drew the will, and that Albion C. Taylor was a nephew of Mrs. Budd, and that at the time she made her will he resided in Lowell, Massachusetts, and afterward died in that city. With

respect to the decree of distribution, the court found that it also declared that the property, upon the happening of the condition therein mentioned, should become "the absolute property of said Albion C. Taylor, of Lowell, Massachusetts, who was therein designated through mistake, as above found, as Albion M. Taylor."

1. The first contention of the defendant is that the evidence and findings relating to the alleged mistake in naming Albion C. Taylor as Albion M. Taylor in the will, and especially in the decree of distribution, was an unlawful and unauthorized collateral attack upon the final judgment of the superior court in making the distribution. Many authorities are cited upon the proposition that a judgment of a court cannot be changed or modified by parol evidence showing a mistake in its terms. This proposition need not be controverted. It may be conceded that if the judgment appealed from had the effect of grafting upon the decree of distribution terms which it did not contain, and contrary to its intent and effect, it would be erroneous. Such, however, is not the effect of the judgment, nor was this the object of the plaintiff in this case. The case presents the familiar instance of a latent ambiguity. The decree of distribution, which is the final statement of the rights of the parties under the will, declares that, in the event there set forth, the land should become the property of Albion M. Taylor, of Lowell, Massachusetts. It is alleged that no person named Albion M. Taylor had ever lived in Lowell, Massachusetts; that the decree was founded upon a will which declared that the Albion M. Taylor there intended was the nephew of the testatrix and that he lived in Lowell, Massachusetts, at the time of the execution of the will. It appears, therefore, if there were no explanation, that there was no person in existence to take under the decree, that is, that there was a latent ambiguity whereby the decree appeared to be inoperative. In further explanation, it is shown that the testatrix had a nephew, whose name was Albion C. Taylor, and who resided in Lowell, Massachusetts, and that she had no nephew named Albion M. Taylor. This does not in any respect change the terms of the decree of distribution, but simply points out the person intended to be described therein, and removes the ambiguity in the decree by showing that there is a person upon whom it can operate. The true

CLIV Cal.—51

rule is stated by the supreme court of the United States in *Patch* v. *White,* 117 U. S. 210, 217, [6 Sup. Ct. 617], as follows: "It is settled doctrine that as a latent ambiguity is only disclosed by extrinsic evidence, it may be removed by extrinsic evidence. Such an ambiguity may arise upon a will, either when it names a person as the object of a gift, or a thing as the subject of it, and there are two persons or things that answer the name or description; or, secondly, it may arise when the will contains a misdescription of the object or subject; as where there is no such person or thing in existence, or, if in existence, the person is not the one intended, or the thing does not belong to the testator. . . . Where it consists of a misdescription . . . if the misdescription can be struck out and enough remain in the will to identify the person or thing, the court will deal with it in that way; or, if it is an obvious mistake, will read it as if corrected. The ambiguity in the latter case consists in the repugnancy between the manifest intent of the will and the misdescription of the donee or the subject of the gift. In such a case evidence is always admissible to show the condition of the testator's family and estate, and the circumstances by which he was surrounded at the time of making his will." A decree of distribution is no more immune against explanation of a latent ambiguity than is a will, and the same rule which the court, in the case cited, applied to an ambiguous will is applicable, under like circumstances, to an ambiguous decree or judgment. This may easily be illustrated by the case of a judgment for money against, we will say, John Smith. An execution being issued against the defendant, the sheriff seizes the property of a man named John Smith in satisfaction of the judgment, said John Smith being an entire stranger to the proceeding, and not the person served with process in the action. No one would for a moment contend that in such a case the man whose property was seized could not go to court and by parol and extrinsic evidence show that, although his name was John Smith, he was not the particular John Smith named in the judgment. Such a proceeding would not be an attack upon the judgment, nor would it in any respect change or modify it. It would merely point out the person to whom the judgment was directed.

2. Defendant further contends that the cause is barred by the provisions of subdivision 4 of section 338 of the Code of

Civil Procedure. This subdivision provides that an action for relief on the ground of mistake must be begun within three years after the cause of action accrues. This contention is founded upon the same misconception of the nature of the case as that upon which the last-mentioned point was based. This is not an action to obtain relief on the ground of mistake in the decree of distribution, but is an action to enforce rights under that decree. The effect of the proceeding is not to change or alter that decree, but to enforce it according to its true intent and meaning. Subdivision 4 of section 338 has no application.

3. The next objection is that the suit involves the adjudication of a forfeiture of the estate of Charlotte Budd Armstrong in an action in equity. This, it is claimed, cannot be done, the proposition asserted being that "it is a universal rule in equity never to enforce either a penalty or a forfeiture." Numerous authorities are cited to this effect. It is claimed that the plaintiff was required to establish the fact that Charlotte Budd Armstrong by removing from the land had forfeited her estate, that it is necessary for him to begin an action for that express purpose, or to terminate her estate by an entry, and that until he has done so he cannot go into equity and quiet the title of his intestate to the said land which, according to defendant's contention, could only vest in his intestate by reason of the forfeiture. This objection assumes that the estate of Mrs. Armstrong was an estate upon condition subsequent which can only be divested by an entry for condition broken, or by a judgment at law. The estate which by the terms of the decree was vested in Mrs. Armstrong was not an estate upon condition, but a conditional limitation. The happening of the condition does not, in contemplation of law, in a case such as that before us, operate to forfeit the estate given to the first taker, but merely to determine it, that is to bring it to an end. Section 778 of the Civil Code is as follows: "A remainder may be limited on a contingency which, in case it should happen, will operate to abridge or determine the precedent estate; and every such remainder is to be deemed a conditional limitation." Section 773 declares that "a fee may be limited on a fee upon a contingency, which, if it should occur, must happen within the period prescribed in this title." The latter clause describes precisely the estate herein created in the intestate of the plaintiff.

The distinction between conditional limitations, contingent remainders, and estates upon condition subsequent, and the different consequences as to the taking effect of the subsequent estate, is clearly set forth in 2 Washburn on Real Property, (6th ed.), sec. 1640, as follows: "If an estate is limited to A *until* B return from Rome, and *after* B return to C, the limitation is a contingent remainder, and good as such. But if the estate had been limited to A, which would be for life if no words of inheritance were annexed, provided that if B return from Rome the estate should go to C, the limitation, though expressly the same in effect as the first, would be, not a remainder, but a conditional limitation. In the one case, if C's estate comes into effect at all, it is after the prior estate had terminated by the natural expiration of the time for which it was limited; whereas, in the other, C's estate, if it took effect, came in and displaced the prior estate before its natural termination, and took its place as a substitute therefor. Then, again, though the estate of A is a conditional one, liable to be defeated by the happening of a contingent event, it is not a case of condition at the common law, where to determine an estate for a breach of it required an entry by the grantor or his heirs, who thereby regained the estate originally parted with; but it is a case where the estate is wholly parted with by the grantor, no interest being left in him, and passes at once, upon the happening of the event, to him to whom it is limited. That contingent event, when it happens, is the limitation of the first estate granted; and the estate, instead of going back to the original grantor, goes over, *eo instanti*, and without any act but that of the law, to the party named in the very gift itself of the estate, as the one to take it in that event." (See, also, to the same effect 1 Washburn on Real Property, (6th ed.), sec. 165; 2 Washburn on Real Property, (6th ed.), sec. 970; 4 Kent's Commentaries 127; *Miller* v. *Levi,* 44 N. Y. 494; *Stearns* v. *Godfrey,* 16 Me. 160; *Coppage* v. *Alexander,* 41 Ky. (2 B. Mon.) 313, [38 Am. Dec. 153]; *Jewell* v. *Pierce,* 120 Cal. 83, [52 Pac. 132].) The latter case is practically the same as the case at bar, and although the point here made was not raised, the suit to quiet title was treated by the court as a proper method of establishing a title in the owner of the subsequent estate. In the present case, therefore, no proceeding for a forfeiture, or by way of re-

entry for condition broken, was required as a condition precedent to a suit in equity to establish title. The estate of .Mrs. Armstrong terminated, *eo instanti,* upon her removal from the land, and that of the plaintiff's intestate immediately vested as a legal estate in possession.

4. There is no merit in the point that the condition annexed to Mrs. Armstrong's estate in the decree of distribution is void because it is repugnant to her estate in fee therein previously created. Even if the ruling applying to grants by an individual is also applicable to a decree, the entire provision must be considered in order to ascertain the intention and effect, and, so considered, the conditions expressed in the decree constitute a limitation and not a rc ugnant provision. (*Pavkovich* v. *Southern Pacific Co.,* 150 Cal. 46, [87 Pac. 1097], and cases there cited.)

5. It is earnestly contended that the evidence is insufficient to support the finding that the decree of distribution provided that the property in question should become "the absolute property of Albion C. Taylor, of Lowell, Massachusetts, who was therein designated through mistake, as above found, as Albion M. Taylor." We think this contention is also untenable. The evidence showed that Albion C. Taylor died in 1901, that he was then upwards of sixty years of age and had resided in Lowell practically all of his life; that he had a brother named Albion R. Taylor who was older than he, and who died when quite young, many years prior to the making of the will in question; that the testatrix, Mrs. Budd, had visited the family long after the death of Albion R. Taylor and was fully aware of the fact that he was dead and that she had no nephew in Lowell, Massachusetts, or elsewhere, of the name of Albion R. Taylor, and no nephew named Albion Taylor except said nephew, Albion C. Taylor, and his son of the same name. It also appeared that no person of the name of Albion M. Taylor ever resided in Lowell, Massachusetts. This evidence was clearly sufficient to show that the person intended by the decree was the same person as that intended by the will, and that this person was no other than Albion C. Taylor, the plaintiff's intestate. The decree identified the person intended by giving the first name as Albion, the last name as Taylor, and the middle initial as "M," and by the fact that he lived in Lowell, Massachusetts. The extrinsic evidence

showed that the decree could not have intended Albion M. Taylor, since no such person existed. This created a latent ambiguity, and in order to show the person who was really intended it was proper to prove the additional facts that the testatrix had a nephew named Albion C. Taylor and that he resided in Lowell, Massachusetts, at the time the will was made and at the time of the decree of distribution, and from this the court properly inferred that the Albion C. Taylor who was her nephew and who resided in Lowell, Massachusetts, was the person referred to in the decree.

6. Several errors of law are assigned by the appellant, none of which we think is well taken. The assessment-rolls were properly introduced in evidence for the purpose of showing that Adaline S. Budd had acquired title to the property by adverse possession. This appears to be the only purpose for which the rolls were admitted, and it will not be presumed that the court considered them for any improper purpose. Furthermore, as both parties claim under the will of Adaline S. Budd, the evidence could have caused no prejudice to the appellant, even if it had been technically inadmissible. The declarations of Mrs. Budd to Mary McCowen to the effect that she had a nephew named Albion C. Taylor who resided in Lowell, Massachusetts, was properly admitted under subdivision 4 of section 1870 of the Code of Civil Procedure, which provides that on a trial there may be proved "the act or declaration, verbal or written, of a deceased person in respect to the relationship . . . of any person related by blood or marriage to such deceased person." The other specifications relate to the evidence introduced for the purpose of showing the facts in regard to the existence and identity of the person named Taylor, mentioned in the decree and in the will in question. There can be no question but that this evidence was admissible for that purpose under the authorities heretofore cited.

The judgment and order are affirmed.

Sloss, J., Henshaw, J., Lorigan, J., and Beatty, C. J., concurred.

Rehearing denied.