(No. 31568.—

MONICA MONARSKI *vs.* MARION GREB *et al.*, Appellees.—
(J. HOWARD McGRATH, Attorney General of the United
States, Appellant.)

*Opinion filed November 27, 1950.*

HAROLD I. BAYNTON, Assistant Attorney General, OTTO KERNER, JR., United States Attorney, THOMAS H. CREIGHTON, GEORGE B. SEARLS, and RALPH S. SPRITZER, for appellant.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, (WALTER C. SENNE, EMIL F. MEIER, and THOMAS F. SCULLY, of counsel,) for appellees.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

The Attorney General of the United States, as successor to the Alien Property Custodian, appeals from a decree of the superior court of Cook County, granting partition to the plaintiff and finding a fee-simple title to two thirds of the property in question to be in Peter Schlosser and William H. Frawley, Jr., as trustees under the will of Francis X. Orthen, deceased. A rather peculiar and unusual set of circumstances is presented, and a freehold is involved.

Father Orthen, the deceased, a Catholic priest, had for many years been the pastor of Sacred Heart Parish of Eau Claire, Wisconsin. He executed his will on May 9, 1943, and died June 14, 1943. His will was admitted to probate July 27, 1943, and later ancillary proceedings were instituted in Cook County and an administrator with the will annexed was appointed. The sole question presented

involved the legal effect of several provisions of the will with respect to a lone parcel of real estate situated in Rogers Park in the city of Chicago, described as lot 10 in block 27, Rogers Park, commonly known as Nos. 1626-1630 Lunt Avenue, Chicago, which is improved by a three-story brick apartment building containing twenty apartments and which is subject to the lien of a trust deed to the Chicago Title and Trust Company, as trustee, to secure indebtedness concerning which there is no issue here.

The will gave one third of the property to the plaintiff-appellee, Monica Monarski, a faithful and kind friend and housekeeper, of Eau Claire. Her right to partition is not controverted nor is the lien of the trust deed denied. The testator, after providing for a number of charitable bequests, in clause 6 bequeathed $1000 to the widow of a deceased brother, a German national, "subject only to the provision for payment hereinafter provided." Clause 7 gave, devised, and bequeathed to Peter Schlosser and William H. Frawley, Jr., as trustees, (and who will hereafter be referred to as "the trustees,") $25,000 to establish and build a high school for the parish, the balance of the necessary funds to be raised by the parish within five years after the date of the testator's death, in default of which the trustees were directed to expend the sum and income therefrom for the interest and benefit of the parish as directed by the Bishop.

Under the eighth clause all the rest, residue and remainder, real and personal, wheresoever situated, was given, devised, and bequeathed: (a) one-third to Monica Monarski, aforesaid, a United States citizen; (b) one-third to "my loving sister, Marion Greb, her heirs and assigns forever" of Germany; and (c) one-third to "my loving brother, William Orthen, his heirs and assigns forever" also of Germany.

Clause 9 provided: "In the event that the bequests to Minnie Orthen, [sixth clause,] Marion Orthen Greb, and

William Orthen cannot be paid to them personally or to their surviving children, personally, after my death, than [sic] I direct that said bequests be held for them for a period of three years after the Armistice of War II, [sic] by the executor or trustees named in Paragraph Seven (7) hereof, and if the said persons or their children are not located or able to be paid said bequests personally, then their share or shares shall be paid to said trustees above named and used for the purposes set forth in Paragraph Seven (7) hereof."

The pleadings, so far as material here, show: Marion Greb and William Orthen are persons within a designated alien country, and an answer was filed on their behalf; the answer of the trustees asserts the devisees and their children are enemy aliens and the bequests cannot be paid to them personally and that as trustees they are seized of and entitled to an undivided two-thirds part of the real estate involved; The Alien Property Custodian, by vesting order No. 5160, executed July 24, 1945, filed September 10, 1945, determined that the devisees, and the children of both, are nationals of Germany, and purportedly vested "all right, title, interest and claim of any kind or character whatsoever," which any of these persons has in respect to the property, in the custodian under the provisions of the Trading With the Enemy Act; an amendment to the complaint filed March 17, 1947, made the Hon. Tom C. Clark, then Attorney General of the United States, as successor to the Alien Property Custodian (Executive Order No. 9788, October 15, 1946, 11 F. R. 11981,) a coplaintiff; disclaimer by Hon. Tom C. Clark, as such successor, disclaiming any interest in the property in suit, was then filed and an order entered June 24, 1947, granting leave to the Attorney General to withdraw as coplaintiff; whereupon, by supplemental counterclaim, the trustees suggested the death of Marion Greb, leaving her surviving a husband

and four children; and subsequently upon the petition of the Attorney General an order was entered thereon granting leave to appear as coplaintiff, without prejudice to proceedings theretofore had.

The cause was referred to a master in chancery and testimony and proof taken. The Attorney General introduced no evidence. The master in a lengthy report found for the plaintiff and that the trustees were entitled to two-thirds interest in the premises, to the exclusion of the Attorney General as successor to the Alien Property Custodian, and subject only to the lien of the trust deed, an assignment of rents to secure the aforesaid indebtedness, costs of administration and possible inheritance taxes. The Attorney General objected to many of the findings, whereupon the objections were overruled and made exceptions to the master's report. After an order substituting the present Attorney General, the chancellor entered a decree overruling the exceptions to the report and supporting the lengthy findings of the master, most of which, or all, were incorporated in the decree which ordered partition and appointed commissioners.

The sole controversy, then, is between the trustees and the Attorney General as to the two-thirds interest in the property. All agree the plaintiff is entitled to her one third and to partition and that the trust deed is a valid subsisting lien. All are in accord that the brother and sister, and their children, respectively, cannot and could not take title under the devise by reason of their being enemy aliens. However, the Attorney General maintains that clause 9 of the will, above quoted, violates the rule against perpetuities and renders invalid the alternative disposition to the trustees, for the reason the alternate gift claimed by the trustees was conditioned upon events which would not necessarily take place within lives in being and twenty-one years of the date of the testator's death, and the will cannot

be rewritten by the courts so as to make the alternative gift vest upon a condition other than that expressed by the testator.

Appellees, on the other hand, contend that a proper construction of the will requires that if an invalid perpetuity is attached to the primary devise in clause 9 of the will it must be confined to the primary devise alone, and that the alternate devise to the trustees, for charitable purposes, is valid and should be sustained. They also argue clause 9 is valid.

The master and chancellor found and concluded the cessation of hostilities by the surrender of the German army on May 7, 1945, and the surrender of the Japanese army on September 1, 1945, constituted the armistice within the meaning of that term as used by the testator in his will. These findings were objected to in the report but the Attorney General does not here contest those findings but contends rather that a gift conditional upon the future occurrence of these events was invalid *ab initio* as a matter of law, and that if by any possibility the estate will not vest within the time required by the rule, the devise is void.

The decree also follows the master's report in finding that the testator "selected as the date of the conditional limitation, an event (the armistice) then certain to all sane persons to occur well within, and prior to any possible expiration of, the period limited by the Rule against perpetuities." To this finding the Attorney General takes violent exception and much space in the briefs is devoted to a discussion of the possibility or lack of possibility of a thirty-year or even an hundred-year war. Of course, the rule is applied as of the time the estate is created and not in the light of what subsequently occurs, and if there is any possibility of a violation of the rule against perpetuities, then a devise of interests dependent upon such provisions is void. Kent says that the possibility that the limitation at its creation, may exceed, in point of time, the authorized

time, is fatal to it (4 Kent Com. 283,) for, as already stated, the future interest must vest within the time prescribed by the rule; otherwise it will be held to be void. 4 Horner-Probate Practice and Estates, sec. 2382.

In cases construing wills the intention of the testator has recently been referred to and designated as the lodestar of construction. (*McClothin* v. *McElvain, ante,* p. 142.) In *Papa* v. *Papa,* 377 Ill. 316, the rule was fathered thusly: "The fundamental rule in construing wills is to ascertain the intention of the testator from a consideration of the whole will, and such intention must be given final effect if not in conflict with an established rule of law or of public policy. [Citing cases.] The whole scope of the will must be considered and every provision given due weight to ascertain the plan of the testator in the light of the facts and circumstances surrounding him, his family and property at the time the will was made. [Citing cases.] The intention must be gathered from the language of the entire will and considered as a whole, and not by extracting therefrom certain language without regard to its relation to the balance of the will. [Citation.] A technical construction of words and phrases will not be carried to the extent of defeating the obvious general intention of the testator, and this intention will be given effect even though the language may not be clear or technically correct. [Citing cases.]"

While the language quoted in this will does not have all the clarity desired, we think the intention is clearly expressed therein that under the exigencies of a war and realizing the difficulties of payment or distribution to the natural objects of his bounty, who were residents and nationals of a country with which we were then at war, the testator, using the only means at his command to devise property under such circumstances, provided that, if his worldly goods could not reach the hands of those he loved, or for fear the same might fall into or pass through the

hands of foreign officials or others who might be unfriendly to the desires he sought to accomplish, he then wished to have his property go to the church, in which he had spent so many years of his life, and to his trustees, to augment the fund already given by the provisions of clause 7 and for the objects and purposes therein expressed. This was his purpose in phrasing an alternative "bequest." When the intention of the testator is ascertained, then the law with respect to perpetuities is applied and if the intention of the testator offends it, the devise is void, as the rule against perpetuities is a rule of law and not a rule of construction, and if it is violated, the devise or gift must fail. *Thomas* v. *Pullman Trust & Savings Bank,* 371 Ill. 577.

Does this will, then, violate the rule? We think not. The Attorney General takes the view that the interest of the devisees vested at once in them and that the estate is one that is vested subject to defeasance upon a condition subsequent and is to be treated as indefeasible if the condition is invalid, in which case he would take the interest of the heirs under the vesting order, and the rule against perpetuities would not apply, as it is applicable only to contingent future interests and not to interests which are vested. (*McKibben* v. *Pioneer Trust & Savings Bank,* 365 Ill. 369.) He further contends that even if it be construed to be a gift to primary devisees subject to a condition precedent, which failed, then the rule against perpetuities does apply rendering the entire provision void, and, therefore, intestacy would occur and the end result would be the same and the custodian is entitled to take as successor to the heirs-at-law. The testator made a gift to his brother and sister and their respective heirs upon the condition precedent that they would be able to receive their shares personally. If not, the trustees were to hold the property for them for a period of three years after the armistice, and if by that time they could not be located or were unable to receive their interests personally, then the trustees were

to apply the interests for the purposes expressed in clause 7. It will be noted that at the time of the testator's death, the war was still in progress. At that time the heirs, unquestionably and admittedly, could not receive their shares and the property passed to the trustees under the provisions of the will. This was, in our opinion, a sufficient vesting in the trustees to avoid any application of the rule against perpetuities, and they held the title subject only to the application of the property and its avails to the use and benefit of the *cestuis que trustent.* If subsequent events were such that the beneficiaries could not be paid personally, then the trustees were to apply the property to other charitable purposes. We think the testator devised this very method so that if his heirs could not receive their shares, personally, his church would be sure to receive the benefits of his worldly goods. His very restrictions preclude any one, including the Alien Property Custodian, from receiving his bounty by standing in the shoes of his devisees or of his heirs, lest it be the charity he so clearly designated, for under the provisions of his will, if the project for the school should fail, the trustees were to use the principal and income for the general interest and benefit of the parish, as directed by the Bishop. To the general rule that the validity of a will is to be determined from the point of view from which it would have been regarded had an action been brought to determine its validity at the time of the testator's death, and that its validity does not depend on events which may have happened since testator's death, there is an exception in the case of alternative limitations, one of which is valid and one of which is invalid as being too remote within the rule as to perpetuities. In respect of this exception, the general rule is that where an estate is limited on alternative contingencies, one of which offends the statute against perpetuities while the other does not, the invalid provision does not affect the validity of the other if the event happens upon which the

taking effect of such other is contingent. (64 A.L.R. 1077.) Thus, where an ultimate trust for certain charities was an alternative and independent gift upon an event ascertainable in a designated time, it was valid notwithstanding the invalidity of the other alternative gift. (*Re Davey* (1915) 1 Ch. (Eng.) 837-C.A.) The rule is stated in *Fowler* v. *Depau* (1857) 26 Barb. (N. Y.) 224, that "if, on a particular contingency, the power of alienation is so suspended that it may possibly exceed the limits prescribed by law, the estate granted on that particular contingency is void; but this defect, which would affect the estate only if that contingency had occurred, can have no effect on it if that contingency does not occur; then that unlawful estate is not attempted. Accordingly, the good alternative estate is sustained notwithstanding a defect which would have been in the other if the course of events had created it."

Our view is that the devise to the brother and sister and their heirs was a gift upon condition, and, the condition having failed, the primary gift could not take effect and the alternate gift obtains. But even assuming the provisions of the ninth clause with respect to the holding of the property for a period of three years after the armistice and the remote possibility of the event not happening within the period established by the rule against perpetuities constitute a violation of the rule, as contended for by the Attorney General, this does not render the entire provision void, nor does it divest the trustees of their interest in the property or avoid the application thereof to the charitable purposes as provided by the will. For the rule against perpetuities does not apply to charitable devises and bequests. (*Smith* v. *Renne*, 382 Ill. 26.) This is not a mixed, indivisible or inseparable trust. On the contrary, the provisions are clearly separable without doing violence to the testator's plan, and, in any event, the heirs would not be entitled to take the same as intestate property. This governing rule was stated in the recent case of *Stubblefield* v. *Peoples*

*Bank of Bloomington,* 406 Ill. 374, wherein we said, "The authorities hold that, if a general overriding trust for charitable purposes can be found from the language used, or if such purpose runs through, permeates and modifies the whole trust in such a manner that its purposes are thus connected, then the entire trust will not be declared void, but the portion relating to the charitable use will be given effect." On this basis alone the decree would be sustainable. A decree may be sustained upon any ground warranted by the record, irrespective of whether the particular reasons given by the trial judge or his specific findings are correct. *Bullman* v. *Cooper,* 362 Ill. 469; *Hazel* v. *Hoopeston-Danville Motor Bus Co.* 310 Ill. 38; *Becker* v. *Billings,* 304 Ill. 190.

For the reasons assigned, the decree of the superior court of Cook County will be affirmed.

*Decree affirmed.*