[Civ. No. 21741. Second Dist., Div. Two. Dec. 4, 1956.]

Estate of BERTA ZUBER, Deceased. HERBERT BROWN-ELL, JR., as Attorney General of the United States, Appellant, v. H. A. GEBHARDT et al., Respondents.

Dallas S. Townsend, Assistant Attorney General of the United States, Laughlin E. Waters, United States Attorney, Arline Martin, Assistant United States Attorney, Mary Eschweiler, Office of Alien Property, James D. Hill, George B. Searls and Irwin A. Seibel, Department of Justice, for Appellant.

Don L. Gilman and Alvin B. Baranov for Respondents.

ASHBURN, J.—The Attorney General of the United States, acting in his capacity of successor to the Alien Property Custodian,[1] appeals from decree of distribution in the estate of Berta Zuber, deceased, because it denies him any participation therein by virtue of the custodian's vesting order of November 1, 1945. The challenged ruling was made upon the theory that respondents had a mere expectancy and did not take under decedent's will any interest which the custodian could seize.

Decedent, a citizen of this country and a resident of Los Angeles County, died on February 7, 1944, leaving a last will which was executed on October 31, 1940. The principal asset of her estate was a parcel of realty.

Paragraph Third of the will made certain specific legacies, three of which named German nationals and residents as recipients. They embraced a watch, silver teapot and porcelain lamp. The will provided that "each such bequest . . . be effective only in the event the beneficiary shall survive distribution of the article bequeathed." Also that, as Germany was then at war, the executor was authorized to defer transmittal to legatees residing in Germany until after termination of the war or such earlier time as he might be satisfied that same could be delivered in good order in Germany. In the event that Germany should be at war when the estate became otherwise ready for distribution, said articles were given to H. A. Gebhardt as trustee for the said named beneficiaries, to be held in trust until in the judgment of the trustee they could be delivered in good order.

Paragraph Fourth disposes of the residue in the following manner. The executor, Mr. Gebhardt, is given discretionary power to sell the same during the ordinary course of the probate proceeding, and in that event testatrix gives all the proceeds to a nephew, Heinrich Schlette, and a niece, Emilie Exner, both of whom were German nationals and residents, "share and share alike, if they both survive distribution;" but in the event of either of them failing to survive that event his or her share to go to the surviving children of that decedent by right of representation. It is also provided that, in the event the executor does not sell the property during pendency of the probate proceeding, said residual estate is

[1]By Executive Order Number 9788 of October 14, 1946 (3 C.F.R., 1946 Supp. 169; 50 U.S.C.A. App., p. 48, following § 6), the authority and property vested in the Alien Property Custodian were transferred to the Attorney General.

given to Mr. Gebhardt as trustee for the benefit of the said Heinrich Schlette and Emilie Exner, and to the surviving children of either of them who might decease, by right of representation; testatrix further directs that the property then constituting the trust estate be sold within three years after its receipt by the trustee and the proceeds of the sale distributed, share and share alike, to said nephew and niece and the children of either of them who may have died prior to such distribution. The concluding paragraph of Fourth confers upon the trustee, notwithstanding "anything which is apparently to the contrary in the foregoing paragraphs," uncontrolled discretion "during the life of said trust" to make remittances from time to time to or for the benefit of either of the German beneficiaries "for their maintenance or education in such amounts and at such times as he in his sole discretion may consider for their best interests."

During the progress of the administration the executor, under court order and for the purpose of avoiding condemnation, sold the realty to the city of Los Angeles, and the court in confirming the sale ordered "[t]hat the proceeds of said sale shall at all times be deemed to be real property and retain the original character of real property." This was but the application of a familiar equity principle (18 Cal.Jur.2d § 14, p. 127), and the parties present this appeal upon that basis, doubtless being persuaded thereto by *Clark* v. *Allen,* 331 U. S. 503, 517 [67 S.Ct. 1431, 91 L.Ed. 1633, 170 A.L.R. 953], which holds that the California reciprocal inheritance statute (Prob. Code, § 259) yields to the Treaty of Friendship, Commerce and Consular Rights with Germany, signed December 8, 1923, and therefore operates only upon personal property. However, no problem of reciprocal rights of inheritance is present in the instant case.

The trial court ruled that the specific legacies to German beneficiaries and the residue of the estate should be distributed to Mr. Gebhardt as trustee; "[t]hat the trust is valid and free from any claim of the United States arising by virtue of Vesting Order Number 5329 for the reason that at the time of the Vesting Order, to wit on November 1, 1945, and at the time of the death of the testatrix, to wit: on February 7, 1944, there was no right, title and interest of the residuary legatees, their interests arising only upon distribution and contingent upon the survival of Heinrich Schlette and Emilie Exner, residuary beneficiaries, and the fact that distribution can be made personally to the beneficiaries, this being a con-

dition precedent, the interests of the foreign heirs arising only upon the distribution of the estate." Distribution was made accordingly. It is that order from which the appeal is taken.

Essentially the ruling is that the German legatees had no estate or interest which the custodian could seize because their rights were subject to a condition precedent which prevented their having any cognizable interest until the contingency ripened into a vested estate and that could happen only upon distribution by the court. Counsel for respondent take substantially the same position in their brief.[2] The appellant argues that respondents took under the will a contingent future estate which is an interest subject to seizure under the Trading with the Enemy Act.[3]

Section 5(b) thereof authorizes the vesting of "any property or interest" and section 7(c) permits seizure of "any money or other property including (but not thereby limiting the generality of the above) . . . choses in action, and rights and claims of every character and description" belonging to or held for the benefit of any enemy alien (50 U.S.C.A. App., §§ 5(b) and 7(c), pp. 32 and 58). Executive Order Number 9095, § 2(c) authorized the vesting of "any other property or interest within the United States of any nature whatsoever owned or controlled by, payable or deliverable to, held on behalf of or on account of, or owing to, or which is evidence of ownership or control by, a designated enemy country or national thereof . . . ," and subdivision (f), "any property of any nature whatsoever which is in the process of administration by any person acting under judicial supervision or which is in partition, libel, condemnation or other similar proceedings and which is payable or deliverable to, or claimed by, a designated enemy country or national thereof." (50 U.S.C.A. App., following § 6, pp. 43-44.)

The language of the vesting order is: "All right, title, interest and claim of any kind or character whatsoever of Heinrich Schlette, children, names unknown, of Heinrich Schlette, Emilie Exner, children, names unknown, of Emilie Exner, Richard Exner, and Kaethe Semmerau, and each of them, in and to the Estate of Berta Zuber, also known as Katherine Auguste Berta Zuber, deceased."

Discussion of the problem thus raised will be directed to the status of the residue, except as otherwise indicated.

---

[2]Respondent Heinrich Schlette has not appeared in this court and counsel disclaim any representation of him.

[3]50 U.S.C.A. App., pages 32 and 58.

Reference to the will discloses that, fairly construed with a view to immediate vesting (Prob. Code, § 28; *Estate of Prior,* 111 Cal.App.2d 464, 469 [244 P.2d 697]), the legal estate was bequeathed to Mr. Gebhardt, as trustee,[4] subject to a right of sale by him as executor in his discretion, and in the event of that occurrence the proceeds to be held in trust. Immediate vesting of the legal title in the trustee is evidenced, among others, by the provision of the last paragraph of Fourth which gives him discretionary control of the income during administration with a view to maintenance of the beneficiaries. ■ It is settled law that a trust for maintenance becomes effective immediately. (*Estate of Dare,* 196 Cal. 29, 37-38 [235 P. 725]; *Estate of Marré,* 18 Cal.2d 184, 188 [114 P.2d 586].) ■ The right of the legatees to receive the proceeds of an executor's sale is subject to the condition that they "survive distribution" by the court. If no sale is made "while the probate proceeding is still pending" the trustee is to hold the residue for the benefit of the two German nationals (or their surviving children) until a sale is made by him in that capacity, and he is directed to do that within three years after distribution to him as trustee, whereupon the proceeds shall be turned over to said Heinrich Schlette and Emilie Exner, or their surviving children, without being subject to any further delay or condition. In the absence of a sale during administration their rights to ultimate distribution are fixed and not subject to divestment. It is only in the event of such sale that their rights (to the proceeds) are conditioned upon "surviving distribution." Thus the condition which respondent's counsel assert to be precedent proves to be a condition subsequent. The quality of the interest of the nephew and niece is to be determined as of the time of decedent's death and is not controlled by subsequent events. Specifically, the *fact* of a sale during administration does not enlarge or detract from the interest or estate which was conferred upon the respondents by the will and the fact of decedent's demise. The equitable estate thus passing to respondent is a defeasible fee subject to a conditional limitation, which is one species of executory devise, an interest later discussed herein. (See 2 Tiffany on Real Property (third edition), § 360, p. 111, § 364, pp. 115-

[4]The intervention of a trust does not affect the nature or transferability of the future estates herein discussed. (69 C.J. § 1674, p. 595; 33 Am.Jur. § 107, p. 564.)

118; *Taylor* v. *McCowen*, 154 Cal. 798, 803-804 [99 P. 351];
Civ. Code, § 778.) The possibility of an executor's sale con-
stitutes a conditional limitation upon the fee or a condition
subsequent which defeats it. Respondent's main arguments
are based upon the assertion that the condition of survival
until distribution is a condition precedent rather than a con-
dition subsequent.

It makes little difference, however, whether the condition
in this case is precedent or subsequent. ▮ Contingent fu-
ture interests are recognized as estates by statute in California.
Civil Code, section 701: *"Interests in real property.* In re-
spect to real or immovable property, the interests mentioned
in this chapter are denominated estates, and are specially
named and classified in part two of this division.'' Section
688 of the same code classifies interests as present or future
with respect to time of enjoyment. Section 690 defines a
future interest as one entitling the owner to possession of
the property only at a future period. Section 693 divides
future interests into those which are vested and those which
are contingent. Section 695 says: *"Contingent interests.* A
future interest is contingent, whilst the person in whom, or
the event upon which, it is limited to take effect remains
uncertain.'' Section 697 provides that a future interest is
not void ''merely because of the improbability of the con-
tingency on which it is limited to take effect.'' In part two
of the same division, mentioned in section 701, are found
sections 767, 773 and 778, which read as follows: ''§ 767.
*Future estates, what.* A future estate may be limited by the
act of the party to commence in possession at a future day,
either without the intervention of a precedent estate, or on
the termination, by lapse of time or otherwise, of a precedent
estate created at the same time.'' ''§ 773. *Remainders, fu-
ture and contingent estates, how created.* Subject to the
rules of this title, and of part one of this division, a free-
hold estate, as well as a chattel real, may be created to
commence at a future day; an estate for life may be created
in a term of years, and a remainder limited thereon; a re-
mainder of a freehold or chattel real, either contingent or
vested, may be created, expectant on the determination of
a term of years; and a fee may be limited on a fee, upon
a contingency, which if it should occur, must happen within
the period prescribed in this title.''[5] ''§ 778. *Remainder*

---

[5]Neither side raises at bar any problem of perpetuities or suspension
of the power of alienation.

*upon a contingency.* A remainder may be limited on a contingency which, in case it should happen, will operate to abridge or determine the precedent estate; and every such remainder is to be deemed a conditional limitation." Section 699, which is captioned *"Qualities of expectant estates"* provides: "Future interests pass by succession, will, and transfer, in the same manner as present interests."

The original Code Commissioners in their note to section 741, Civil Code,[6] say in part: ". . . Much nice learning has been thrown around the subject of contingent remainders, and many nice distinctions and refinements have accumulated, but in many of the States, and by this Code, future interests include all estates in expectancy, vested, and contingent, and all future interests are descendible, devisable, and alienable in the same manner as estates in possession, so that a thorough examination of the common law rules concerning remainders, and the delicate questions springing therefrom, must be esteemed as of more interest in showing the learning and scholarly attainments of the early law writers rather than as of any practical utility."

The decisions have followed this view rather consistently. They establish the general rule stated in 18 California Jurisprudence 2d, section 4, page 389, as follows: "A future interest, whether vested or contingent, is transferable, and may be encumbered." (See also *Sinclair* v. *Crabtree,* 211 Cal. 524, 528, 530-531 [296 P. 79] ; *Gray* v. *Union Trust Co.,* 171 Cal. 637, 642 [154 P. 306] ; *Blackburn* v. *Webb,* 133 Cal. 420, 422 [65 P. 952] ; *Johnston* v. *City of Los Angeles,* 176 Cal. 479, 486 [168 P. 1047] ; *County of Los Angeles* v. *Winans,* 13 Cal.App. 234, 242-244 [109 P. 640] ; 13 Cal.App. 257, 260 [109 P. 650] ; *Caldwell* v. *Rosenberg,* 47 Cal.App.2d 143, 146 [117 P.2d 366] ; *Anglo California Nat. Bank* v. *Kidd,* 58 Cal.App.2d 651, 654 [137 P.2d 460] ; *Estate of Schneider,* 140 Cal.App.2d 710, 718 [265 P.2d 45].) The authorities draw no distinction in this respect between conditions precedent and subsequent. That a contingent remainder is an estate and not a mere expectancy, such as those mentioned in Civil Code, section 700,[7] is held in *Akley* v. *Bassett,* 68

---

[6]Code Commissioners' notes are accepted aids to the determination of the intent and meaning of the code sections so annotated. (*Rowe* v. *Chandler,* 1 Cal. 167, 178-179; *O'Hara* v. *Wattson,* 172 Cal. 525, 534 [157 P. 608]; *Baranov* v. *Scudder,* 177 Cal. 458, 465 [170 P. 1122].)

[7]§ 700. "A mere possibility, such as the expectancy of an heir apparent, is not to be deemed an interest of any kind."

Cal.App. 270, 283 [228 P. 1057]; *County of Los Angeles* v. *Winans, supra,* 13 Cal.App. 257, 260; *Hall* v. *Wright,* 17 Cal.App. 502, 506-507 [120 P. 429]; *Meyer* v. *Superior Court,* 200 Cal. 776, 789, 791 [254 P. 1108].) Additional cases involving conditions subsequent and upholding assignability of interests subject to such contingencies are the Gray, Caldwell, Johnston and Anglo California cases, cited *supra.* Among those considering conditions precedent are Sinclair, Schneider and Winans, *supra.*

Respondent presents this case upon the postulate that the German nationals have nothing except as conditioned in the first part of section Fourth of the will, i.e., surviving distribution by the court. That such is not the true concept appears from the preceding discussion, but if it be accepted as the proper basis of decision no different result follows. In that event section 767, Civil Code, becomes operative, and as applied to the present situation in which (supposititiously) respondent Emilie Exner takes nothing unless or until she survives distribution, there is presented a contingent future interest created by will which has no supporting particular estate; that is known as an executory devise. 2 Tiffany on Real Property, third edition, section 360, page 109, describes the nature and effect of such an interest: "In view of these considerations, and in analogy to the doctrines which prevailed in regard to the limitation of uses, it was decided that devises of freehold estates might be made to take effect in the future, that is, at a time subsequent to the testator's death, either with or without a preceding limitation to another. Such a limitation by way of devise of an estate to arise in futuro, which could not be regarded as creating a contingent remainder, became known as an 'executory devise,' a term which is also frequently applied to the prospect or possibility of an estate created by such a devise.

"As examples of an executory devise may be mentioned a devise to A of an estate to commence six months after the testator's death, or when he becomes a citizen of the United States, provided he does so within a limited time. In such a case, the limitation of an estate to commence in the future not being preceded by a limitation in favor of another, the testator's fee simple vests in his heir or heirs with a right to the accruing rents and profits, until the estate vests under the executory devise by reason of the satisfaction of the condition precedent, unless there is a

residuary devise, in which case the fee simple will pass thereunder subject to the possibility of subsequent displacement.'' ▮ That such estates are recognized in California appears from the code commissioners' explanation of section 767 and their reference to the note to section 741 above quoted. They say, under section 767 : ''See note to Sec. 741, ante. The definition in this section comprehends every species of expectant estates created by the act of the party; remainders strictly so called, future uses and executory devises. The words, with or without the intervention of precedent estate, embrace what are technically known as estates *in futuro*. The words 'lapse of time or otherwise,' provide for contingent limitations operating to abridge or defeat the prior estate.—*Nicoll* v. *N. Y. & Erie R. R.*, 12 N.Y.Rep., pp. 121, 139. Expectant estates, says Chancellor Walworth, 'include every present right and interest, either vested or contingent, which may by possibility vest at a future day.'— *Lawrence* v. *Bayard,* 7 Paige, p. 76.'' See also 10 California Jurisprudence, section 8, page 605.

▮ As such interests have the status of estates they are assignable under section 699. That executory devises are transmittable future estates is the general law. (21 C.J. § 231, p. 1032; 31 C.J.S. § 122h, p. 140; 19 Am.Jur. § 132, p. 587.)

▮ While it is said in the decisions of some sister states that '' [e]xecutory limitations which are so worded as to convey no interest unless the executory devisee survives the happening of the contingency have been held to carry no interest either devisable, descendible, or alienable, prior to the contingency happening'' (31 C.J.S. § 122h, p. 141), that rule does not apply in California. The specific language of our statutes, construed in the light of the Code Commissioners' explanations above quoted, leaves little room for doubt on this.

▮ If such an estate is created by an *inter vivos* instrument it is known as an ''executory interest,'' which 'is also recognized as an alienable estate. See 2 Tiffany on Real Property, third edition, § 356, p. 103, § 363, p. 114, § 367, p. 120; 3 Simes Law of Future Interests, § 709, p. 147, § 713, p. 154, § 714, p. 156; 19 Am.Jur. § 95, p. 555, § 132, p. 587; 31 C.J.S. § 15, p. 28; Rest. Law of Property, § 162, p. 591. Comment c on this section of the Restatement, at page 592, says: ''Except when the form of the transfer provides otherwise, the transferee acquires all the potentialities held by the transferring owner, that the share or proportion ulti-

mately constituting the future interest will be greater than the presumptive share of the transferring owner at the time of such transfer (see Illustration 4 I).''

The cited case of *Estate of Jameson*, 93 Cal.App.2d 35 [208 P.2d 54], cannot be accepted as establishing a rule of nonassignability of contingent future estates dependent upon a condition precedent, although some of its language tends in that direction. Decedent there devised to her husband a life estate in certain real property conditioned upon his surviving distribution of her estate; in event of his failure so to do same was to go to certain nephews; she also left the residue to him upon the same condition and provided that in the event of the husband's failure to survive distribution the residue should go to her stepsons. The trial court ordered distribution of the life estate to the husband and held he was entitled to the income from that parcel from the date of death. The remaindermen, as appellants, argued that the life estate would not vest unless or until the husband had survived distribution and hence the income up to that time was available for expenses of administration. The appellate court held that that income went to the executor and was subject to costs of administration. Concerning the nature of Mr. Jameson's estate the court said, at page 40: ''Applying the foregoing principles of law to the facts herein, it is clear that the devises to the husband were made upon a condition precedent: that he survive distribution of testatrix's estate. Accordingly neither his life estate in the realty nor his interest in the residue could vest until such condition was fulfilled. Until that time he had a mere expectancy in the property devised. In the interim, title to the life estate and to the residue vested in the remaindermen, i.e., the nephews and stepsons, respectively, subject to divestiture upon fulfillment of the condition.'' But the court, while reversing in other respects, affirmed the order ''insofar as it decrees distribution of a life estate in the realty to Mr. Jameson'' (p. 43), notwithstanding that the condition related to survival of distribution of the estate, not distribution of the particular parcel. We are unable to reconcile this ruling with the remarks above quoted from page 40 and prefer to attribute them to a discussion of vesting in the sense of coming into the right of immediate enjoyment.

Under California statutes and decisions above cited respondent Exner took under the Zuber will an interest which

was not less than a contingent future estate, transmissible by way of assignment or bequest. That the custodian had the right to seize such an estate is clear. The Schneider case, *supra,* 140 Cal.App.2d 710, at 718, says: "Conceding that the interests thus created were contingent, they were nevertheless property interests capable of transfer or of inheritance. (Civ. Code, §§ 669, 688, 693, 699; *Sinclair* v. *Crabtree,* 211 Cal. 524, 528 [296 P. 79].) Since they were interests capable of transfer, they became property of the German beneficiaries promptly on the death of Mrs. Schneider in 1945.

"The conclusion is, therefore, unavoidable that at the time of the vesting order, in 1946, the estate of each legatee and the beneficial interest of each beneficiary of the trust was subject to seizure under the Trading with the Enemy Act, as amended."

The same ruling has been made in other jurisdictions. (See *In re Bendheim's Estate,* 124 Misc. 424 [209 N.Y.S. 141], affirmed in 214 App.Div. 716 [209 N.Y.S. 794]; *In re Carrington's Estate,* 195 Misc. 442 [90 N.Y.S.2d 757]; *In re Kuhirt's Estate,* 132 N.Y.S.2d 97; *In re Bendit's Will,* 214 App. Div. 446 [212 N.Y.S. 526]; *Clark* v. *Continental Nat. Bank of Lincoln, Neb.,* (D.C. Neb.), 88 F.Supp. 324.) The Bendheim case says, at page 143: "Alfred Bendheim was vested with an expectant estate. 'An expectant estate is descendible, divisible and alienable in the same manner as an estate in possession.' Real Property Law, § 59. Such an estate, therefore, is an interest in property and as such was subject to taking over under the federal statute." *In re Carrington's Estate, supra,* 90 N.Y.S.2d, at 758: "The order of the Alien Property Custodian vested 'all right, title, interest and claim of any kind or character' of the legatee and that order was sufficiently comprehensive to acquire the legatee's interests in the estate that came into being upon decedent's death. The fact that such interest was contingent and that compliance with the condition attached to the legacy was a prerequisite to its payment . . . did not affect the validity of the order. The expectant estate of the legatee was subject to seizure under the government's order."

Certain authorities relied upon by respondent (and those making similar holdings) cannot control the decision herein, for they proceed upon the predicate that, for one reason or another, the enemy alien never acquired any right, title or

interest whatever and hence there was nothing to seize. Such cases as *Monarski* v. *Greb,* 407 Ill. 281 [95 N.E.2d 433]; *Chase Nat. Bank of New York City* v. *Reinicke,* 76 N.Y.S.2d 63; *McGrath* v. *Ward,* (D.C.Mass.) 91 F.Supp. 636; *Harvard Trust Co.* v. *Attorney General,* 329 Mass. 79 [106 N.E.2d 269]; *Brownell* v. *Edmunds,* (4th Cir.) 209 F.2d 349.

Respondent relies heavily upon *Anglo California Nat. Bank* v. *Kidd, supra,* 58 Cal.App.2d 651, which holds that a contingent interest in the corpus of a trust estate is not subject to execution. Counsel insist that the analogy to a vesting order is complete, but in that they are mistaken. ■■■ The federal government in the exercise of its war powers cannot be controlled by state policy as to exemption from execution. Moreover, the cited case does not proceed upon the basis of nonexistence of an interest which could be seized, but upon one of policy. At page 655 it is said: ''The rule is sound, based upon the well-known fact that ordinarily on a forced sale of such an interest a nominal price only is obtained, to the injury of the judgment debtor.

■■■ ''The above rule does not prohibit the outright sale or transfer of the uncertain, prospective interest of a legatee providing the sale or assignment is fair and not against public policy.'' 2 Freeman on Executions, section 178, page 905, is cited in support of the ruling that a contingent interest is not subject to execution until reduced to possession. Reference to that work ˙(third edition) discloses that the basis of the rule is the out-moded common law doctrine that a contingent interest is not assignable.

*San Diego Trust etc. Bank* v. *Heustis,* 121 Cal.App. 675, 694 [10 P.2d 158], does seem to say that a contingent future interest cannot be taken on execution because it is a mere expectancy having no substantial present existence; but there was no application for hearing in the Supreme Court; and the conclusion is opposed to the statutes and decisions above cited.

That immunity to seizure under execution is not a test of substantial existence sufficient to sustain a vesting order is evidenced by the settled rule that the spendthrift feature of that type of trust does not preclude acquisition of the beneficiary's interest by the custodian. (See 1 Scott on Trusts, § 157.4, p. 798; Griswold on Spendthrift Trusts (Second Edition), § 344, p. 406; Rest., Trust, § 157, comment b, p. 391.)

■■■ In an appeal to the court's sense of justice respond-

ent Exner emphasizes the fact that she is a permanent resi-
dent and now a citizen of the United States. She further
asserts (and it does not seem to be denied) that she came
to the United States in 1921, resided with Mrs. Zuber and
her husband in New York until 1927, filing naturalization
papers in 1926. In 1927 she returned to Germany to marry
Karl Exner. She lived with him about 15 months, bearing
a son whose exclusive custody was awarded her when she
divorced Exner in December, 1930. Thereafter, she resided
permanently in Germany; she says she had intended to
return to the United States but was compelled to remain
where she was in order to take care of two incapacitated
aunts, that during that period she received financial aid
from Mrs. Zuber. Immediately upon cessation of hostilities
she made application for immigration to the United States,
obtained a quota number and arrived here in January, 1950,
becoming a permanent resident and eligible for citizenship
which she obtained in due course. She also avers in her
Petition To Enforce Trust Under Will that she has never
been a member of the Nazi party or its affiliated organiza-
tions. Respondent's brief further says (although this seems
to be an enlargement on the petition) : ". . . that she was
never disloyal to the United States, never a member of any
Nazi organization, never aided or assisted Germany in its
war effort, always intended and expected to return to and
become a citizen of the United States and has always re-
garded her statement in her first declaration of intention
to become an American citizen, filed in 1926, wherein she
agreed to renounce any allegiance or fidelity to any foreign
country, as a binding obligation upon her. It further states
that she always regarded herself as a potential American
citizen, at all times friendly to the United States and never
as its enemy, even during the period when she was in Ger-
many. After the death of her two aunts in Germany and
while Germany was at war, she found it was impossible for
her to leave that country and return to the United States."

Counsel's suggestion is that this change of status brings
respondent within the rule of *Guessefeldt* v. *McGrath,* 342
U.S. 308 [72 S.Ct. 338, 96 L.Ed. 342], wherein it was held
that the phrase "resident within the territory" of an enemy
(as used in § 2(a) of the Trading With the Enemy Act)
did not include a Germant citizen who had been living
in Hawaii for many years, had gone to Germany with his
family for a vacation trip before World War II broke out,

was involuntarily detained for 11 years in Germany, being unable to secure passage to the United States before the date of expiration of his re-entry permit, and who during his stay did nothing directly or indirectly to aid the war effort of the enemy. Respondent's facts do not measure up to the rationale of that case because she voluntarily became and remained a resident of Germany many years before the outbreak of war with this country. The element of necessity which ruled the Guessefeldt case was absent in that of Mrs. Exner. Moreover, change of status of the alien, occurring after the vesting order, cannot affect its validity or give rise to any new rights with respect to the property unless that be sanctioned by some statutory or perhaps some regulatory authority. (*Swiss Nat. Ins. Co.* v. *Miller,* 267 U.S. 42, 44-45 [45 S.Ct. 213, 69 L.Ed. 504]; *Farmers' Loan & Trust Co.* v. *Hicks,* 9 F.2d 848, 853 (C.C.A.2), cert. denied, 269 U.S. 583 [46 S.Ct. 120, 70 L.Ed. 424]; *In re Littman's Estate,* 176 Misc. 679 [28 N.Y.S.2d 458, 459].)

In *Estate of Schneider, supra,* 140 Cal.App.2d 710, 720, we voiced our concern over being the agency which must enforce this type of confiscation—it is nothing less—but we are bound to apply the law as it stands. The remedy for hardships such as are now visited upon respondents herein lies with the Congress, not the courts.

The briefs contain considerable discussion of the right of the attorney general to vest property at this time,—all of which is beside the point. We have no such subsequent or amended vesting order as was presented in the Schneider case, *supra.* We therefore have no occasion to discuss the Jay Treaty of Friendship of 1923, or the effect of the Bonn Convention of 1953, which reaffirmed and reinstated the Jay Treaty.

The condition of the Zuber bequest has now been fulfilled. The contingent estate was transferred to the custodian by the vesting order; the estate has ripened into a vested one which belongs to the Attorney General as successor to the Custodian. The time has come for distribution to the Attorney General, notwithstanding the terms of the trust, for those terms can never be fulfilled. (See *In re Kuhirt's Estate, supra,* 132 N.Y.S.2d 97; *Central Hanover Bank & Trust Co.* v. *Markham,* (S.D.N.Y.) 68 F.Supp. 829, 830; *In re Reiner's Estate,* 44 N.Y.S.2d 282; *Clark* v. *Continental Nat. Bank of Lincoln, Neb., supra,* (D.C.Neb.) 88 F.Supp. 324, 337.)

The legacies of the watch, silver teapot and porcelain

lamp to German nationals are strictly in the class of executory devises; as such they were subject to the seizure power which was exercised by the custodian. They must be distributed to the Attorney General.

The judgment is reversed with instructions to enter judgment distributing to the Attorney General of the United States the watch, silver teapot and porcelain lamp mentioned in the will, together with the residue of decedent's estate, free of any claims of respondents and other persons mentioned in decedent's will as legatees, devisees or beneficiaries of the trust respecting same.

Moore, P. J., and Fox, J., concurred.

A petition for a rehearing was denied December 31, 1956, and the petition of respondent H. A. Gebhardt for a hearing by the Supreme Court was denied January 30, 1957. Carter, J., Schauer, J., and McComb, J., were of the opinion that the petition should be granted.