[Civ. No. 11458. Fourth Dist., Div. One. Mar. 14, 1973.]

Estate of GEORGE ULRICH HUBER, Deceased.
GERTRUDE R. HUBER, Petitioner and Respondent, v.
LUTHERAN HIGH SCHOOL ASSOCIATION OF
SOUTHERN CALIFORNIA et al., Objectors and Appellants.

### COUNSEL

Poindexter & Doutre, Alfred B. Doutre and George E. Sperling, Jr., for Objectors and Appellants.

Brant, Pettitt & Druten and Freeman R. Brant for Petitioner and Respondent.

### OPINION

**AULT, J.**—The United California Bank, executor and testamentary trustee under the will of George Huber, and three charitable remaindermen: Lutheran High School Association of Southern California; the Braille Institute of America, Inc.; and the Trustees of the University of Pennsylvania, appeal from an order directing the bank as testamentary trustee to distribute probate income held by it in the amount of $59,253.95 to respondent Gertrude Huber.

#### FACTUAL BACKGROUND

In September 1965 Dr. George Ulrich Huber died testate, survived by his elderly, unmarried sister Gertrude, who is the respondent in this appeal, and by his widow Margaret, whom he had married six months before his death. Dr. Huber's first wife, Anna Scheuer Huber, predeceased him in

1964, ending their 54-year marriage. Under Anna's will, Dr. Huber was entitled to receive the residue of her estate only if he survived distribution of the estate. As her executor, Dr. Huber had inventoried assets in the estate at approximately $50,000. He died before the estate was distributed.

Dr. Huber's will was admitted to probate in November 1965. With respect to Margaret, the will provided: "I am intentionally making no provision in this will for my said wife, Margaret Ellen Huber, since she has sufficient resources and income for her own support, and she also has the right to life care and residency at the Wesley Palms Retirement Home, 2404 Loring Street, San Diego, California." The will contained alternate provisions for distribution of the residue of Dr. Huber's estate.

A. *If Gertrude should "survive distribution"* of the estate, the residue was given to United California Bank in trust for her benefit. The trustee was directed to sell the securities and invest the proceeds in savings and loan accounts, to charge all expenses of administering the trust to the corpus, and to pay the "net" income of the trust to Gertrude during the balance of her lifetime; Gertrude's interest in the principal and/or income of the trust was not to be subject to claims of creditors. On Gertrude's death the trustee was directed to pay $14,000 in specific bequests and to distribute the remaining portion to the three remaindermen. (Paragraphs Twelve and Thirteen.)

B. *If Gertrude should not "survive distribution"* of the estate, the $14,000 in specific bequests were to be paid, and the balance distributed to the three remaindermen directly, without the intervention of any trust. (Paragraphs Five through Eleven.)

United California Bank and William J. Taft,[1] as coexecutors of the estate, filed an inventory and appraisement showing the value of the assets in Dr. Huber's estate to be *$534,606.87.*

The estate was immediately confronted by claims and multiple lawsuits filed by Margaret and by Anna's heirs:

A. Margaret Huber filed a creditor's claim for $37,227.92 because of a promissory note she had signed allegedly at Huber's request; in addition she contended Huber had made her an *inter vivos* gift of securities worth $163,000.

B. The heirs of Anna Huber contended *$330,496.66* of the assets inventoried in Dr. Huber's estate rightfully belonged in Anna's estate.

In March 1968 the claim of Anna's heirs was compromised and settled

---

[1] In April 1968 Mr. Taft resigned, and the bank was appointed sole executor.

for the sum of *$194,000, to be paid from the assets of the George Huber estate* directly to the heirs of Anna Huber. The agreement was signed by the Anna Huber heirs, the three remaindermen under George's will and by the United California Bank as executor of both estates. [Apparently the bank succeeded George Huber as executor of Anna's estate.]

On April 25, 1968, the probate court signed an order which approved both the compromise and the executors' current account. The executors were ordered to pay the Anna Huber heirs $194,000 from the assets of the estate, pay certain extraordinary fees, retain $75,000 in the estate, and distribute the balance of the assets [approximately *$202,000*] to the United California Bank as trustee, "subject to the claims of creditors, claimants, the United States Government and the State of California," to be held and administered in accordance with Paragraph Twelfth of the will. While there is nothing in the record on appeal or in the superior court probate file to support it, the bank and the remaindermen tell us on appeal that the preliminary distribution was authorized by their oral stipulation in open court on April 23, 1968.

Included in the funds distributed to the trustee by the April 25, 1968, probate order was a sum in excess of $50,000, which represented income accumulated during probate. Shortly after this preliminary, but major, distribution to the trustee, Gertrude Huber filed her first petition for an order instructing the trustee to distribute to her the net income accumulated during probate administration and distributed to the trustee. The United California Bank, as trustee, filed written objections to the motion on many grounds. The objections were supported by a memorandum of points and authorities filed on behalf of the bank as executor and the three charitable remaindermen, all represented by the same attorneys. The objections pointed out that Margaret Huber was contending that the sum of $163,000 was not properly a part of the George Huber estate. The court denied Gertrude's petition without prejudice on June 11, 1968.

In August 1968 the bank filed its first account as trustee and reported it had received from the executor $55,951.73 as probate income and that this sum "has been held and kept invested in savings and loan accounts." The amount was corrected and reduced to $53,417.72 by the court's order approving the account. Again in 1970 the bank as trustee reported, in its second account, that "the sum of $53,417.72 is undistributed probate income held in temporary investment." In 1971 the bank as trustee reported simply that it was holding assets of $183,253.56, without specific mention of probate income.

Margaret Huber's claims against the estate were finally resolved in 1971, when this court affirmed the judgment of the trial court which had awarded her $26,059.54 plus interest on her creditor's claim and which had denied her claim for $163,000 based on an alleged *inter vivos* gift. The executor thereafter paid Margaret some $37,000 [the amount of the judgment plus interest].

In February 1972 Gertrude Huber, by this time 82 years old, filed her second petition for an order instructing the trustee to distribute probate income to her and supporting points and authorities. The bank as trustee objected on the ground Gertrude had not survived "distribution" of the estate. [The estate has been open since 1965.] The memorandum points and authorities were filed in the name of the bank as executor and the three remaindermen, all represented by the same attorney.

On February 29, 1972, the probate court ordered the bank to distribute to Gertrude Huber all the net probate income in its possession, to wit, the sum of $59,253.95. Of this, $53,417.72 accrued prior to April 23, 1968; $5,836.23 accrued thereafter.

The bank, as both executor and trustee, and the three charitable remaindermen appeal from the order, all represented by the same attorneys.

## CONTENTIONS ON APPEAL

Appellants contend:

1. The court erroneously awarded Gertrude income from assets which were not part of the estate;

2. The court disregarded the condition precedent in the will requiring Gertrude to survive distribution, thus ignoring the intention of the testator;

3. Income is payable to Gertrude only from the date of distribution to the trust;

4. The order requiring distribution of probate income was inconsistent with the court's previous order.

## FINAL DISTRIBUTION AS A CONDITION PRECEDENT

The will sets up the residuary trust for Gertrude provided she survives "distribution" of the estate. Relying upon language in *Estate of Jameson,* 93 Cal.App.2d 35, 40 [208 P.2d 54], appellants contend the will requires Gertrude to survive until final distribution of the estate, and that in the interim title to the assets and the probate income is vested in the

remaindermen, subject to divestment upon the happening of the contingency.

While *Jameson* has not been overruled, a later court found difficulty in reconciling the ruling of the case with its language (see *Estate of Zuber,* 146 Cal.App.2d 584, 594 [304 P.2d 247]). More recently the California Supreme Court has held the rule of *Jameson* is not applicable where distribution has been unreasonably delayed. (*Estate of Taylor,* 66 Cal.2d 855, 859, fn. 2 [59 Cal.Rptr. 437, 428 P.2d 301].)

Several factors dictate the conclusion George Huber's 82-year-old sister has met any reasonable interpretation of the survival requirement in his will. Beyond all doubt, final distribution of this estate has been unreasonably delayed. Seven years is more than enough! (*Estate of Taylor, supra,* 66 Cal.2d 855, 859.)

Moreover, the substantial part of the estate, including the bulk of the money which the order appealed from directs to be paid to Gertrude, was distributed from the estate into the trust in 1968. To that extent Gertrude has survived distribution. No reason has been advanced why the additional probate income, accumulated since the April 1968 order, could not and should not have been distributed from the estate into the trust before this time. The testator's intent is substantially complied with when the beneficiary is alive at the time distribution could have and should have been made. (*Estate of Taylor, supra,* 66 Cal.2d 855, 858.) Any other holding would defeat the testator's intent to provide for his elderly sister. Appellants may not defeat Gertrude's rights by dragging their feet. It is inconceivable to us that George Huber even imagined that his sister's rights under his will would not have vested seven years after his death.

### THE RIGHT TO INCOME VESTS FROM THE DATE OF DEATH

██ Appellants contend Gertrude's right to income accrues only from the date of distribution. They incorrectly cite *Estate of Platt,* 21 Cal.2d 343 [131 P.2d 825], to support this proposition,[2] despite the court's clear holding at page 348 that the right to income from the trust accrues from the date of the testator's death in the absence of an express provision to the contrary in the will.

---

[2]In their brief, appellants state of *Estate of Platt, supra,* "The California Supreme Court affirmed the holding of the lower court that the income was to be paid to the wife from the date of distribution of the estate to the trustee and not from the date of the decedent's death."

The holding of the court was exactly the opposite and is expressed at page 348 of the opinion: "So as there is no express provision in the will as to the date from which payment of income shall accrue, . . . the rights of both the wife and son to income under the trust accrue from the date of the testator's death."

In 1959 the Legislature enacted Probate Code section 162.5 which provides in pertinent part: "Unless otherwise provided by the will of the testator, (a) all net income received during the period of administration from real and personal property not specifically or demonstrably devised or bequeathed, . . . shall be distributed pro rata as income to any trust . . . of the residuary estate . . . ."

This statute is a codification of the "Massachusetts Rule" and is in accord with section 234 of the Restatement Second of Trusts. The statute applies where the will makes no specific disposition of probate income (*Estate of Overbury*, 243 Cal.App.2d 193, 194-195 [52 Cal.Rptr. 240]). Since the will in question makes no express distribution of probate income, such income is payable to the income beneficiary of the residuary trust. (*Estate of Overbury, supra*, 243 Cal.App.2d 193, 194.) A fortiori her right to income accrues from the date of the testator's death.

### THE PROBATE INCOME WAS PROPERLY COMPUTED

█ Appellants contend the $194,000 sum paid in settlement to the Anna Huber heirs was not properly a part of the estate and that income attributable to it should not be considered probate income. The argument overlooks the fact the assets were possessed and inventoried in the estate and contributed income to the estate. The compromise settlement agreement itself recites the sum is to be paid from the assets of the George Huber estate, and the probate order approving it authorizes the executors to sell assets of the estate to make the payment.

There is no evidence to support the contention interest earned by or income received from the claimed assets was paid in the settlement. The record shows the estate retained the assets and settled with Anna's heirs for a cash sum less than had been originally claimed. The chart which appellants entitle "Details of Allocation of $194,000 Settlement," and which they submit on appeal to support the argument $22,933.79 in interest was included in the $194,000 settlement, is self-serving and appears to be a calculation made after the fact. Nothing indicates the settlement was presented to the trial court on that basis or that anything other than a lump sum settlement occurred.

Appellants also claim this court should subtract from the probate income awarded Gertrude all or a portion of the $9,641 interest paid Margaret after her $26,059.54 judgment was affirmed. They incorrectly argue this

was interest on "an asset adjudged to belong to Margaret Huber," ignoring the fact the judgment was based upon a creditor's claim. Civil Code section 730.05, subdivision (a), reads: "Unless the will otherwise provides, income from the assets of a decedent's estate after the death of the testator and before distribution, *including income from property used to discharge liabilities,* shall be distributed in the manner set forth in Chapter 8 (commencing with Section 160), Division 1, of the Probate Code." (Italics added.) The order appealed from directs distribution of the probate income in accordance with Civil Code section 730.05, subdivision (a), and Probate Code section 162.5 to which the Civil Code section refers.

## OTHER CONTENTIONS

Appellants' other contentions are without merit. The order directing distribution of probate income to Gertrude is not basically inconsistent with the prior order denying her similar petition in 1968. The previous denial was made without prejudice at a time when Margaret's suit claiming $163,000 of the estate's assets was still pending. It is apparent the earlier denial contemplated a later renewal when, and if, that obstacle was removed.

In addition to the trust, Dr. Huber left his sister a specific bequest of $10,000 and [we are told by the briefs] $41,000 in bank accounts. Appellants argue this demonstrates an intent not to give Gertrude the probate income. The trust was created for the benefit of the sister, not the remaindermen. In any event, the Legislature has not left the matter to be determined by implication. The statute states probate income shall be distributed in the manner followed here, *unless the will provides otherwise.* (Prob. Code § 162.5.)

## CONFLICT OF INTEREST

We are disturbed by the conflict of interest which this case presents. The dispute involves the income beneficiary and the remaindermen. The bank, either as executor or trustee, has no legitimate interest in the controversy, and it should not have participated in it. Furthermore, we are unable to understand how the same attorneys can represent both the bank and the remaindermen. That representation has placed the attorneys in a position where they represent the parties involved on one side of the controversy as well as the bank which owes a fiduciary duty to their adversary. No fees should be allowed the bank or its attorneys for the litigation of this dispute.

The latter may look to the remaindermen for any fees they may have coming.

The judgment is affirmed.

Whelan, Acting P. J., and Cologne, J., concurred.