[Civ. No. 69408. Second Dist., Div. One. Dec. 28, 1983.]

Estate of SARA LEE CHAPMAN WETHERBY, Deceased.
SECURITY PACIFIC NATIONAL BANK, as Executor, etc.,
Petitioner and Respondent, v.
GLADYS F. WETHERBY, as Executrix, etc., Objector and Appellant.

226

COUNSEL

Shepherd, Shepherd & Dundas and John A. Dundas II for Objector and Appellant.

Dixon, Howell, Westmoreland & Newman and D. M. Westmoreland for Petitioner and Respondent.

OPINION

HANSON (Thaxton), J.—Appeal taken from an order of the probate court "instructing executor, approving executor's first account, determining trust income and ordering preliminary distribution of said trust income." Gladys F. Wetherby, as executrix of the estate of Oscar H. Wetherby, filed objections to the first account of respondent Security Pacific National Bank (hereinafter referred to as Bank), as executor of the estate of Sara Lee Chapman Wetherby. After hearing and argument on the objections, which concerned the equitable allocation of monies between the two estates, the probate court

adopted the position concerning allocation taken by respondent Bank. Objector has taken a timely appeal from the order made below. The appeal lies (Prob. Code, § 1240, subds. (k) and (l)); we reverse.

## FACTS

The case is here on objector's appendix in lieu of clerk's transcript, as provided by California Rules of Court, rule 5.1. There is no dispute as to the factual matters which have given rise to this litigation.

Sara Lee Chapman Wetherby (hereinafter referred to as Sara) died on February 8, 1982, leaving an estate of approximately $2.5 million. Her will, after making some minor specific gifts, left the residue of her estate consisting entirely of her separate property, to respondent Security Pacific National Bank as trustee, to hold said residue in trust for the use and benefit of her husband of 53 years, Oscar H. Wetherby (hereinafter referred to as Oscar), during his lifetime. Upon Oscar's death, the trust was to terminate and be distributed to four individuals not related to decedent Sara by blood (and referred to here as the remaindermen).

Oscar survived his wife by 46 days; he died March 27, 1982, leaving an estate of over $800,000. His sister, Gladys, was appointed executrix on May 10, 1982, and was the objector below and the appellant herein.

Respondent Security Pacific National Bank was appointed executor of Sara Wetherby's will on April 12, 1982.

During the period between the death of Sara and the death of Oscar, no executor had been appointed to administer the estate of Sara. However, during that 46-day period, the estate received or became entitled to certain monies: (1) corporate dividends; (2) interest on certain bank accounts and certificates of deposit; and (3) some funds from a Texas trust, derived from the rental of certain property subject to that trust. Respondent Bank, assuming the role of active advocate for the remaindermen named in Sara Wetherby's will, took the position below that only monies *actually received* by Sara's estate during the period between the two deaths was properly allocable to the estate of Oscar, and the probate court so ruled. The amount deemed allocable pursuant to respondent Bank's interpretation was $1,320.44, while objector claimed the sum that should have been allocated exceeded $20,000.

## ISSUES

Upon this appeal, respondent Bank has apparently conceded that the third item in dispute, the rental income received from the Texas trust, should be

allocated to the estate of Oscar; we agree, and that issue needs no further discussion. What remains are the allocation issues concerning corporate dividends and the interest on bank accounts and certificates of deposit. In order to appropriately dispose of these two items, however, some discussion is required.

DISCUSSION

I. *History*

Sara's will, in the fifth paragraph, directed, in section (c), that the testamentary trust for Oscar "shall terminate when my husband and I are both deceased, and the then undistributed trust income and principal shall be distributed to the following named persons in equal shares . . . ." No provision was made in the will for monies received *before* respondent Bank was appointed trustee. Such monies have been viewed as probate income, a unique form of income distinguishable from ordinary trust income. (See *Estate of Huber* (1973) 31 Cal.App.3d 126 [107 Cal.Rptr. 89].) ■ Although Sara's will made no disposition of this income, the general rule has long been that a life beneficiary, such as Oscar was for a short period of time, is entitled to the income from a residuary testamentary trust such as that established by Sara's will, income generated from the *date of death* of the testatrix. (*Estate of Platt* (1942) 21 Cal.2d 343 [131 P.2d 825].)

Prior to 1967, the "gap" occasioned by the interim between death and distribution of a testamentary trust to the trustee, an interim during which income continued to flow from the estate assets, was governed by now-repealed Civil Code section 730.06, as interpreted by *Estate of Feldman* (1956) 145 Cal.App.2d 19 [301 P.2d 627]. *Feldman* held on facts almost identical to those involved in the case at bench that when the first life income beneficiary of the testamentary trust died before any distribution had been made to the trust, despite the beneficiary's entitlement from the date of death, if nothing had actually been paid to the trustee prior to the life beneficiary's death, the life beneficiary's estate got nothing.

In 1967, the California Legislature enacted, as an urgency measure, a new Principal and Income Law, effective July 1, 1968. It repealed certain sections of the Civil Code previously applicable to trust principal and income, including Civil Code section 730.06, referred to above. The new law was added to the Civil Code as chapter 2.5, sections 730 through 730.17 (added by Stats. 1967, ch. 1508, § 2, p. 3576). Our research discloses no California case interpreting provisions of the 1968 act pertinent to the factual situation presented herein.

Our analysis begins with Civil Code section 730.04, subdivision (d), which provides: "Whenever an income beneficiary's right to income shall cease by death, or in any other manner, all payments theretofore actually paid to the income beneficiary or in the hands of the trustee for payment to the income beneficiary shall belong to the income beneficiary or to his personal representative; all income actually received by the trustee after such termination shall be paid to the person next entitled to income by the terms of the trust. *This subdivision shall not apply to income received by a trustee under subdivision (c) of Section 730.05.*" (Italics added.)

Most importantly, Civil Code section 730.05, subdivision (c), newly enacted in 1968, provides that: "When an income beneficiary's right to income, including interest payable under Section 162 of the Probate Code, shall cease by death, or in any other manner, during the period of probate administration, *income attributable to the period prior to the termination of such right, when subsequently received by the trustee, shall be equitably prorated between the beneficiary or his personal representative and the person next entitled to income by the terms of the trust instrument.*" (Italics added.)

The Legislature further declared, in characterizing the new Principal and Income Act as an urgency measure, that the new enactment changed the rule established by *Estate of Feldman.* (See Stats. 1968, ch. 448, § 6.)

Objector's counsel duly apprised the trial court of the pertinent provisions of the Principal and Income Law which has been the law since 1968, to no avail. Respondent Bank argued that it had always allocated only those funds *actually* received during the interim period, (pursuant to *Feldman*), and the probate court adopted that position. This appeal followed.

■ The trial court was not at liberty to ignore the 1968 legislation, nor are we. It clearly compelled delineation of "probate income" and equitable proration of same between the life beneficiary and the remaindermen. The Legislature had specifically rejected the *Feldman* rule of no apportionment, and it had by implication rejected treatment of this income on a solely "cash received" basis.

In view of the foregoing, it becomes crucial to determine the meaning of the language of section 730.05, referring to income "attributable" to the period prior to the termination of such right . . ." that is, to the 46-day period which occurred between the deaths of Sara and Oscar; any monies received by the estate of Sara during that period and perceived as income, was subject to equitable proration, bearing in mind the legislative history and present provisions of law.

We deem "attributable" to refer not only to sums actually paid but to *entitlement* by the estate, rather than physical receipt. This interpretation is, in our view, rational, sound, and in keeping with legislative intent. We need not decide in the case at bench what would have constituted an "equitable" proration, since no proration was even attempted by the trial court. Most of the funds to which the estate of Sara became entitled during the 46 days, i.e., the rental income, the cash dividends and the bank accounts' interest, were not unusual or substantial in relation to the size of the estate, and should, in our view, have been allocated by the court below to the estate of Oscar.

## II. *The Corporate Dividends*

The major item of income, which constituted the objector's claim to over $20,000, consisted of ordinary cash dividends on corporate shares owned by Sara at her death, which had been declared payable but not received during the crucial period. Three possible dates could be applied in determining when these dividends became income attributable to Sara's estate: (1) the date the corporation declared the dividend would be paid at some future time; (2) the date the corporation determined the entitlement to the dividend by the stockholder of record; and (3) the date of actual payment. The trial court chose number (3), and since actual payment was not received by Sara's estate during the crucial period, ruled that Oscar's estate was to receive nothing. We turn to the Principal and Income Act for what assistance it can give in deciding this issue.

Civil Code section 730.04 provides a comprehensive set of rules for determining what is principal and what is income of a testamentary trust. While we are not dealing with ordinary trust income, the provision which applies to corporate dividends, subdivision (e), provides that: "Corporate distributions to stockholders shall be treated as due on the day fixed by the corporation for determination of stockholders of record entitled to distribution or, if no date is fixed, on the date of declaration of the distribution by the corporation."

Thus, physical receipt is rejected in the testamentary trust context by the Legislature, and *entitlement* recognized as the decisive factor. The rule set forth in subdivision (e) has been recognized by the Restatement Second of Trusts section 236 and by other commentators as well. We deem it persuasive here.

We hold that the trial court erroneously selected the date of actual payment as the controlling date. The objector is entitled to a redetermination of allocation of ordinary corporate dividends to which Sara's estate became

*entitled,* on the date fixed by the corporation for determination of stock-holders of record or in the absence of such corporate determination, the date of declaration of the dividend.

III. *Interest on Bank Deposits*

The record before us discloses that decedent Sara owned five different interest bearing bank deposits at her death, including an interest bearing commercial account, a passbook savings account, certificates of deposit (with maturity dates after Oscar's death), and one certificate of deposit which matured during the 46-day period.

The objector below claimed entitlement to per diem interest on these accounts (approximately $1,000), on an accrual rather than cash basis. Respondent Bank contended that the only probate income received during the crucial period was $114.44, interest actually paid on the commercial account.

Turning again to the Principal and Income Law, Civil Code section 730.04, subdivision (b) provides that the beneficiary of a testamentary trust is entitled to payments made to the trust, as income (as opposed to principal), in the following manner: "(b) Testamentary trust. Upon an asset becoming subject to a trust by reason of a will, (1) Receipts due but not paid at the date of death of the testator are principal; (2) Receipts in the form of periodic payments not due at the date of death of the testator (other than rents, annuities, interest on bank savings accounts, interest on savings and loan association accounts and corporate distributions to stockholders) shall be treated as accruing from day to day. That portion of the receipt accruing before the date of death is principal, and the balance is income. (c) Other cases. In all other cases, any receipt from an income-producing asset is income even though the receipt was earned or accrued in whole or in part before the date when the asset became subject to the trust."

It may be seen that the basic thrust of these provisions is to distinguish *between* principal and income of an existing testamentary trust; they do not lend themselves easily to application to the situation presented here, which is to "equitably allocate" income "attributable" to the interim period between the deaths of Sara and Oscar. As we have stated, we can find no California case which has any bearing on this situation. First, again we reject the position that only interest on these accounts actually paid to Sara's estate is "attributable" to the period in question. Of course, sums actually paid would be sums to which Oscar's estate was entitled. In addition, however, Oscar's estate, in our view, was entitled to interest which *accrued* per diem, on all the accounts *during* the interim period, and by accrual we mean

*entitlement,* rather than actual payment. Pursuant to this analysis, Oscar's estate was entitled to interest on all the accounts, calculated on a per diem basis during the period in question. It also should receive the interest to which Sara's estate was entitled as the result of the maturing of the one certificate of deposit during the crucial period.

The order is reversed. The matter is remanded for disposition below consistent with this opinion. Objector-appellant to recover costs.

Lillie, Acting P. J., and Dalsimer, J., concurred.